Turner *v.* Hubbell. 1807.

2d 457
60 77

In the Court below,

THOMAS TURNER, *Plaintiff;* RICHARD HUBBELL, *Defendant.*

THIS was an action of *assumpsit.*

The declaration stated, that *Richard Hubbell,* jun. a son of the defendant, received on board of a sloop, of which he was the commander, at Newbern, in North-Carolina, sundry articles of merchandize belonging to the plaintiff, to be transported to New-York, on freight ; that said *Hubbell,* in consideration of a reasonable sum paid to him for the freight, promised to transport said articles to New-York, and there deliver the same to the plaintiff's consignee ; that he neglected to perform his promise, and sold and converted said articles to his own use, whereby the same were wholly lost to the plaintiff. The plaintiff afterwards applied to said *Hubbell,* and demanded satisfaction for the injury, and proposed to institute a suit against him ; whereupon the defendant requested the plaintiff to forbear to sue his son, and to institute his suit against one *John Selby,* who, the defendant declared, was equally concerned in said fraudulent conduct, and was, in truth, the real owner of the sloop, and received the avails of the property. The declaration then proceeded as follows : " And the more effectually to prevent the plain-
" tiff from prosecuting the said *Richard Hubbell,* jun. for
" said injury, and to induce him to attempt to recover his
" damages of him the said *Selby,* the defendant then and

A. received goods on freight, and promised to transport them to their place of destination, and deliver them to the consignee, but sold and converted them to his own use. The owner being about to institute a suit against him for damages, B. the father of A. promised him, the owner, by parol, that if he would forbear to sue A. and would institute a suit against C. and should fail to recover, he B. would pay

the damages. The owner accordingly did forbear to sue A. and instituted a suit against C. and failed to recover.—Held, that this promise of B. was within the statute of frauds and perjuries.

L l 1

1807.

TURNER
*v.*
HUBBELL.

" there, in consideration, that the plaintiff would forbear to
" arrest, sue, or prosecute his said son for said damages, but
" would sue and prosecute to final judgment a suit therefore
" againt the said *Selby*, assumed and to the plaintiff faith-
" fully promised, tha the would pay the amount of such da-
" mages, if the defendant should fail to recover judgment
" against said *Selby* therefore ; or, in case he should recover
" such judgment, and should be unable to collect the amount
" thereof of said *Selby*, that he the defendant would pay the
" whole, or such part thereof as said *Selby* should be unable
" to pay : and the plaintiff then and there, in consideration
" of the aforesaid promise of the defendant, assumed and
" promised to the defendant, that he would forbear to sue,
" arrest, or prosecute said *Richard Hubbell*, jun. for said da-
" mages, but would sue and prosecute to final judgment a
" suit against said *Selby* therefore." It was then averred, that
the plaintiff did forbear to sue *Hubball*, and instituted a suit
against *Selby*, and produced all the proof which he could
obtain to induce a recovery against him, but failed, of all
which the defendant had notice.

The general issue was pleaded ; and on the trial, the
plaintiff, after the other facts in the case were conceded, of-
fered to prove, by parol testimony, the promise of the de-
fendant, as alleged in the declaration ; to the admission of
which the defendant objected, on the ground that said pro-
mise, not being reduced to writing, was within the statute
of frauds and perjuries. The court were of opinion, that
the testimony offered was inadmissible, and accordingly ru-
led it out. A verdict being found, and judgment rendered
for the defendant, the plaintiff filed his bill of exceptions.

*Daggett*, and *Fairchild*, for the plaintiff, contended, that
this promise was not within the statute, on two grounds :

1. Because the statute regards defaults or miscarriages
arising out of *contracts* only, but not promises for *wrongs*
done.

2. Because this was an *original undertaking*, by the defendant, upon a new and sufficient consideration. In illustration of this point, the cases of *Read* v. *Nash*, (a) *Williams* v. *Leper*, (b) *Castling* v. *Aubert*, (c) and *Houlditch & al.* v. *Milne*, (d) were cited, and commented upon.

*Ingersoll*, and *R. M. Sherman*, for the defendant in error.

The only question arising on the record is, whether the promise stated in the declaration is such an undertaking for another, as is required by the statute of frauds and perjuries to be in writing ? The words of the statute are, " any special " promise to answer for the debt, default, or miscarriages of " another person." From the several cases which have occurred under this branch of the statute, the following definition of the promise it intends is deducible : " An undertak- " ing by a person, *not before liable*—for the *purpose* of secur- " ing or performing—the *same* duty—for which the party for " whom the undertaking is made, is, *at the same time*, liable.

The following promises, not being within this definition, are exempt rom the operation of the statute :

1. By a person before liable. As if one of two or more *joint* debtors promises to pay the whole debt, he will be liable *severally* on this promise. It is not undertaking for the debt of another only, but for the debt of himself and another. Nor is there, in such case, any of the temptations to fraud contemplated in those to which the statute extends ; since the creditor will be as safe with a joint, as with a several liability of the promissor.

Such seems to be the doctrine in the case of *Stephens* v.

(a) 1 *Wils.* 305.        (b) 3 *Burr.* 1886.
(c) 2 *East* 325.        (d) 3, *Esp. Rep.* 86.

*Squire,* (e) in which a note in writing was held unnecessary, " it not being a promise *solely* for the debt of another." But in the case of *Winckworth* v. *Mills,* (f) at *Nisi Prius,* Lord KENYON held, that a promise by the indorser of an unpaid note, to indemnify the holder, if he would proceed to enforce payment against the other parties to the note, ought, by the statute, to be in writing. The counsel were dissatisfied with his ruling ; and its correctness is very questionable. The reasoning of Lord ELLENBOROUGH, in the case of *Castling* v. *Aubert* (g) is strongly corroborative of the doctrine in *Stephens* v. *Squire.*

2. A promise not for the *purpose* of securing or performing the original duty, although such security or performance may be the *consequence.* Thus, in the case of *Tomlinson* v. *Gill,* (h) the defendant promised the widow and administratrix of the intestate, in consideration that he might administer with her, to make up the deficiency of assets for payment of debts. On a bill filed by *Tomlinson* and others, creditors, for a discovery and payment, it was holden by Lord Chancellor HARDWICKE, that the case was not within the statute. It is obvious, that although these were subsisting debts, to which the administratrix would be liable, at the same time, that *Gill* was liable on his promise ; yet the payment (or security) of those debts was not the *object* of the promise. Had *Gill* paid the administratrix a sum equal to the deficiency of assets, and the whole estate been afterwards wasted by her, he would not have been liable on his promise to the creditors ; although, in that event, they would have lost their debts. So far from being a promise to answer for their debts, the final *loss* of them would be consistent with a punctual fulfilment of the undertaking.

(e) 5 *Mod.* 213. *Esp. Dig.* 100.
(f) 2 *Esp. Rep.* 484.
(g) 2 *East* 325.
(h) *Amb.* 330.

In *Castling* v. *Aubert*, and in *Anstey* v. *Marden*, (*i*) the principle under this head is applied; although the latter case did not seem to solicit its application.

3. A promise not for the performance of the *same* duty. In *Read* v. *Nash*, (*f*) the defendant promised *Tuack*, the defendant's testator 50*l.* if he would withdraw his record in an action against one *Johnson* for assault and battery. This promise was holden not within the statute, because *Johnson* never was liable to pay that particular debt of 50*l.* nor did it then appear, before trial, that he would be liable for any thing. Had the promise been to pay the damages, which the plaintiff had sustained, by the assault of *Johnson*, it would have been for the *same* duty, and within the statute. In England, a withdrawment of the record is a *bar* to another action. It might hence seem as if the 50*l.* was paid *as* damages. But had the consideration of the promise been a *nonsuit*, instead of a *retraxit*, it would be equally good; and the original demand on *Johnson* might have been enforced, even after payment of the 50*l.* In this light, it appears evident, that the 50*l.* was not the *same* duty for which *Johnson* was liable; had it been, the *payment itself* would have been a satisfaction, and a bar. The same doctrine is recognized, and illustrated, in the case of *Buckmyr* v. *Darnall* (*k*).

4. A promise is not within the statute, if there is not a *cotemporary liability* of the promissor, and of the party for whose benefit it is made. (*l*) Thus, if no credit is given

(*i*) 1 *New Rep.* 130.

(*j*) 1 *Wils.* 305.

(*k*) 2 *Ld. Raym.* 1035. S. C. 6 *Mod.* 184. 1 *Salk.* 27. 3 *Salk* 15. *Holt.* 606 but not so well reported.

(*l*) 2 *Term. Rep.* 80, *Matson* v. *Wharam. Cowp.* 227, *Jones* v. *Cooper.* 1 *H. Bla.* 120, *Anderson* v. *Hayman.* 1 *Bos. and Pul.* 158, *Keate* v. *Temple.* 3 *Lev.* 363, *Masters* v. *Marriott.* 1 *Burr.* 373, *Harris* v. *Huntbach.* 1 *Ld. Raym.* 224, *Watkins* v. *Perkins.* 2 *Ld. Raym.* 1085, *Buckmyr* v. *Darnall.*

to the party for whose benefit the promise is made, but the whole is *originally* given to the party promising ; as if A. say to B. " furnish J. S. with goods, and I will pay for them, the promise is not within the statute. The law is the same, where the party originally chargeable, by circumstances, which, in their *time*, or their *nature*, are *previous* to the promise, becomes *exonerated*, so that he is not liable *eo instanti*. The new promise would then be only for what *was once* the debt of another. This is the *only* point, under the statute of frauds, decided in the case of *Williams* v. *Leper*. (*m*) This case, being much relied on by the plaintiff's counsel, merits particular examination. It is claimed to have been decided on the ground, that parting with the lien was a *new* consideration ; and it is hence inferred, that even where the original liability *continues*, a new promise will not be within the statute, if made on a new and distinct consideration ; an inference, unwarranted by that case, and unsupported by any other.

In that case, *Williams*, a landlord, entered the premises, for the purpose of distraining for rent due from his tenant, *Taylor*, an insolvent person, and *had the goods in his custody*. He parted with them to *Leper*, who was agent for *Taylor's* creditors, to sell for their benefit, on his promising *Williams* to pay the rent for which they were liable as a pledge. The court considered this as substantially an actual distress. By a rule of law clearly recognized, but too familiar for the court to repeat " in so many words," *Taylor*, by this disdistress, was forever discharged of all personal liability for the rent, the plaintiff having *elected* a remedy which would bar an action. Consequently, when *Leper* promised, *Taylor* was *not liable at all*. An attention to the reasons given by the court, will clearly shew, that this was the principle of their decision. Lord Mansfield says, " the case has no- " thing to do with the statute of frauds." The *res gesta* " would entitle the plaintiff to his action against the defen-

(*m*) 3 *Burr.* 1886. S. C. 2 *Wils.* 308.

" dant. The landlord had a legal pledge. He enters to dis-
" train. *He has the pledge in his custody.*"—" The goods
" *are the fund.* The question is *not between Taylor and the
" Plaintiff.*" Justice WILMOT says, " the tenant was here
" the original debtor. The plaintiff had *two* remedies
" against him."—" I consider this distress as being *actually*
" *made.*"—" *Leper* became the *bailiff of the landlord ;* and
" when he had sold the goods, the *money was the landlord's*
" in his *own* bailiff's hands ; therefore, an action would have
" lain against *Leper* for money had and received to the plain-
" tiff's use." On this Justice YATES is not as explicit ; but
Justice ASTON says, " if this was a promise *to pay the debt
" of Taylor*, I should think it within the statute, upon Sir
" *Fletcher Norton's* distinctions, which are the true ones.
" But I look upon the *goods here to be the debtor's*" Sir
*Fletcher Norton's* proposition was " if the original debtor
" is *discharged, then* it is an original promise." It is on the
whole clear, that the decision in that case turned *wholly* on
the point, that *Taylor* was not liable *at all*, when *Leper* made
the promise.

In the case of *Houlditch* & *al* v. *Milne*, (n) at *Nisi Prius*,
Lord Ch. J. ELDON seems to consider the case of *Williams* v.
*Leper*, to which he manifestly refers, as warranting the
proposition, that whenever one is induced by the promise,
to part with goods, on which he has a lien, the statute will
not apply, even if the original debt is *not* discharged ; the
very conclusion against which the court, in *Williams* v. *Leper*,
seem most solicitous to guard. Indeed, a *cotemporary liabi-
lity* in the original and collateral undertakers, is no where
admitted without a written promise on the part of the lat-
ter, except in that opinion of Lord ELDON. The opinion
ascribed to his Lordship was not necessary in the case ; for
the undertaking, on the part of the defendant, was original,
and not as surety ; and the credit given the other party seems
to have been given by mistake. As that opinion is grounded

(n) 3' *Esp. Rep.* 86.

1807.

TURNER
*v.*
HUBBELL.

wholly on a reference to *Williams* v. *Leper*, which, as it is not *named*, was probably not before his Lordship, and to which that opinion is categorically opposed, it is presumed, it will have but little efficacy in introducing a course of anomalous decisions.

The promise in this declaration has no one quality to exempt it from the operation of the statute. It is an undertaking by *Richard Hubbell*, the defendant, a person *not before liable—to pay* the *same* damages, *eo nomine*, to which *Richard Hubbell, jun.* was, and *continues*, liable.

It is, however, claimed, that the statute does not embrace a promise to answer for the *tort* of another. No such opinion, however, is to be found in any book ; and the plain words of the statute furnish the best reason why the question was never made before. But this declaration charges that *Richard Hubbell*, jun. *undertook* to carry the goods and deliver them to the consignee of the plaintiff in New-York : a violation of this *agreement* is the ground of the liability, for which the defendant is claimed to be responsible.

It is further contended, that the *new consideration*, namely, the forbearance of *Richard Hubbell, jun.* and prosecution of *Selby*, renders this an *original* undertaking by the defendant. No case will warrant the principle of this position. In *Tomlinson* v. *Gill*, before mentioned. Lord HARDWICKE, indeed, observes, " The modern determinations have made a dis- " tinction between a promise to pay the original debt, and " on the foot of the original contract, and where it is on " a new consideration." But it is noticeable, that " where it " is on a new consideration," is, by his Lordship, put in contra-distinction to a promise to *pay the original debt*, and on the *foot of the original contract*. He could mean no more than, that the promise was not *for* the original debt, but for a new and distinct purpose, as before explained In *Rotherby* v. *Curry*, (*o*) *Fitch* v. *Hutchinson*, (*p*) *Chater* v. *Beck-*

(*o*) Cited 3 Burr. 1887.      (*p*) 2 *Wils.* 94.

*ett*, (*q*) and many other cases, there was a new consideration ; but they were all holden to be within the statute. In *Anstey* v. *Marden*, (*r*) the defendant was considered as purchasing the debts of an insolvent at 10*s*. on the pound ; and in *Castling* v. *Aubert*, as purchasing the defendant's right in certain policies ; in each of which cases, the undertaking was not for the *same* debt. A new consideration, when spoken of by the court, or commentators, is synonymous with " a new object, or interest" in the party undertaking ; and imports what is observed by Lord HARD-WICKE, in *Tomlinson* v. *Gill*, that the promise is not to " pay the original debt on the foot of the original contract." That part of the promise, which respects a reimbursement of the plaintiff's expenses in prosecuting *Selby*, had it constituted the whole agreement, would not have been within the statute. The evidence was not admissible to enable the plantiff to recover for that only ; as a contract is in its nature *entire*, and no part can be proved, if any be within the statute. This point was directly decided in *Chater* v. *Beckett*, and constituted the principal question in that case. The same principle furnishes a conclusive answer to the claim of the plaintiff, that the statute does not embrace promises to answer for the *tort* of another ; admitting, that the promise being to pay such part of the judgment against *Selby* as he was unable to pay, was, *quoad hoc*, an undertaking to answer for the judgment *debt* of another.

By THE COURT, unanimously,

The judgment was affirmed.

(*q*) 7 *Term. Rep.* 201.     (*r*) 1 *New Rep.* 130.

M m m