WASHINGTON,
March,
1831.

DAVID HARRINGTON vs. JOHN RICH.

The power of arbitrators is not determined by their neglect to attend at the time and place appointed for holding the arbitration. And they may appoint another session within any reasonable time, unless prevented by an express revocation of the power, or by the terms of the submission.

An application to a probate judge to renew the commission on an insolvent estate, if not followed by any proceeding of the probate court upon it, may be proved by parol evidence.

An order drawn for a debt due from the drawee to the drawer, though not expressed to be for value received, may be left to a jury, as evidence of an assignment of the debt from the drawer to the payee, when accompanied by circumstances tending to establish the fact of such assignment.

A verbal promise of an administrator to pay a debt of his intestate, if certain arbitrators, chosen by him and the creditor, should adjudge it due, is void under the statute of frauds, passed Nov. 9, 1822 —Nor is it saved from the operation of the statute, though given in consideration of the creditor's forbearance to prosecute his claim against the estate ; and although such forbearance may, in the end, have defeated the claim.

This was assumpsit in several special counts, alleging in substance, that on the 16th day of January, A. D. 1822, Samuel Rich, since deceased, was indebted to Dustin Willard, then resident in Ohio, but since deceased, in the sum of thirty dollars ; which debt the said Willard then sold and assigned to Thomas McCloud, at the same time drawing an order on said Rich in favor of McCloud for said sum ;—that said debt was further assigned by McCloud to Allen, and by Allen to the plaintiff, upon a full and valuable consideration paid ;—that after the assignment to the plaintiff, and after the expiration of the time allowed by the court of probate for the exhibition of claims against the estate of said Rich, which had been represented insolvent, but within the six months allowed by law for the judge of probate, in his discretion, to open the commission for the allowance of further claims, the plaintiff applied to said judge to have said commission opened and extended, for the exhibition and allowance of this demand ;—that said judge was about to act upon said application and open the commission for the purpose aforesaid, when the defendant, in consideration that the plaintiff would withdraw said application, and not prosecute said claim against the estate, but would submit the same to the determination of certain arbitrators named, promised to pay said demand to the plaintiff, if it was decided to be justly due ;—that relying on this promise of the defendant, the plaintiff did withdraw his application aforesaid, and had never prosecuted said claim against the estate, and did submit said claim

WASHINGTON,
March,
1831.

Harrington
vs.
Rich.

to said arbitrators, who were mutually chosen by him on the one part, and by the defendant, as administrator of said estate, on the other ;—that said arbitrators took upon themselves the burden of said award, and met the parties at a time' and place appointed, for the hearing and determination of the matter submitted ; when the defendant refused to suffer said arbitrators to proceed, and revoked their powers ;—that in consequence of this the plaintiff's remedy against the estate was defeated, and his claim wholly lost.

Plea, *non assumpsit*, and issue joined thereon.

The indebtedness of Rich to Willard was proved as alleged in the declaration.   And to show the alleged assignment of the debt from Willard to McCloud, from McCloud to Allen, and from the latter to the plaintiff, the order, with the several endorsements thereon, all the signatures being conceded to be genuine, was offered in evidence, and was as follows :

" Mr. SAMUEL RICH,

   " Sir,—Please to let Mr. Thomas McCloud have thirty dol-
" lars, and that will be your discharge from me in full of our
" accounts.                    DUSTIN WILLARD."

   "*Darling Township, Union County, Jan.* 16, 1822."

                        " *Worthington, April* 23, 1827.

" MR. SAMUEL RICH,

   " Please pay the within order to Asaph Allen, and oblige
" yours, &c.                    THOMAS McCLOUD."

   " Dustin Willard."

   " This sold to David Harrington, and received my pay for
" the same.   October 25th, 1827.     ASAPH ALLEN."

No further evidence of the several assignments was given, and it did not appear that Willard, or his representatives, had ever called on Rich for payment, or asserted any interest in the debt, after giving the order to McCloud.   It was objected that this evidence was not sufficient to satisfy the averments in the declaration, or to shew any of the assignments alleged.   But the county court overruled the objection, and suffered the order and endorsements thereon to be read, as evidence of the assignments of the debt.

To prove that the plaintiff made application for a renewal of the commission, in order to obtain an allowance of this demand against the estate of Rich, the judge of probate was called as a witness.   The defendant objected, on the ground that the application could only be proved by the records of the probate court; but the objection was overruled and the witness admit-

Washington,
   *March,*
   1831.

   Harrington
      *vs.*
      Rich.

ted.   It was admitted that the defendant and one Samuel Rich were the administrators on the estate of said Rich deceased. From the evidence it appeared that the first meeting of the arbitrators was attended by the plaintiff and defendant, with Samuel Rich his administrator, and the hearing was adjourned to a subsequent day, when the plaintiff attended, but neither the defendant nor any of the arbitrators appeared.   And on the application of the plaintiff the arbitrators soon afterwards appointed another session, and gave notice thereof to the said Samuel Rich.   At this meeting the defendant did not attend in person, but Samuel Rich appeared by authority from him, and interposed a prohibition of all further proceedings, and no award was made.

The defendant contended and requested the court to charge the jury, that the authority of the arbitrators was determined by their neglect to attend at the time appointed by the adjournment.   But the court charged, that as no time was limited for making the award, the arbitrators had authority to call a new meeting.   The defendant also contended that his promise was void under the statute of frauds, as being a promise to answer for the debt of a third person, and as a promise by an administrator to answer damages out of his own estate.   But the court decided, and instructed the jury, that such ground of defence was not available.   A verdict and judgment having passed for the plaintiff, the defendant filed exceptions to the several decisions aforesaid, which were removed to this court according to the statute.

*Upham & Keith in support of the exceptions.*—The plaintiff in each of his special counts, to shew property in himself, had alleged an assignment from Dustin Willard either directly or indirectly to himself; and to support this declaration, it was necessary to prove a legal assignment of the demand.   And should the court be of opinion that it was not necessary for the plaintiff to have alleged his interest, still, since he has done it, he is bound to prove it as alleged.—2 Doug. 665.   The order from Willard to McCloud transferred no interest in the debt, which was a chose in action, but only gave an authority to receive the $30, if Rich would pay it.   If he would not pay it, McCloud could not have maintained any action against Rich, but Willard must have sued for it.—1 Chit. Pl. 10.   The order does not, in any manner, make Willard responsible to Mc-

Washington,
March,
1831.

Harrington
vs.
Rich.

Cloud, if Rich should refuse to pay it; which must have been the case if McCloud had an interest in the order.  He was therefore but the special agent of Willard to receive the money.  And being such agent merely, without an interest in the debt, he could not, by his endorsement of the order, transfer any interest to a third person.

The court below erred in admitting parol evidence of the plaintiff's application to the probate court.  Probate courts are made courts of record ; are to have a seal, and to appoint a register, whose duty it is to keep a record of each order, sentence and decree of said court, and record all things proper to be recorded ; copies of which, attested by him, shall be legal evidence.—Stat. 322.  The only evidence of proceedings had in a court of record is an attested copy of the files and records.  Courts of record speak by means of their records only.—3 Stark. Ev. 1043.  And the same may be said of all judicial tribunals, whether technically courts of record or not, if they preserve written memorials of their proceedings.  The application contemplated by the statute is such as the probate court would be authorized to act upon, and it might become a matter of record, that it may appear to have been made within six months.

It is further insisted that the defendant's promise, not being in writing, was void within the statute of frauds, as a special promise by an administrator to answer damages out of his own estate.—Stat. 115.  To charge an executor or administrator on such a promise, it is not only necessary that the promise should be in writing and signed by him, or his agent, but the promise should be made on good consideration.—1 Com. Cont. 48–9—1 Sacend. R. 210—7 T. R. 350—1 Cowp. 289.  The statute having been passed for the relief of personal representatives, it should be so construed as to give effect to that intention.  And that no encouragement given by an administrator, of the payment of the debts of the intestate, should be binding on his private property, the statute has most wisely provided that he shall not be personally liable on such promise, unless it shall have been reduced to writing.  The act of submitting a claim to arbitration is not an admission of assets.—5 T. R 6.  Indebtedness in one right will not sustain a promise to pay in another right, without some new consideration, as forbearance or the like.—1 Sw. Dig. 247–8—Rob. Fr. 104–5.

Washington,
*March,*
1831.

Harrington
*vs.*
Rich.

The promise was equally void by the statute, as an under-taking to answer for the debt, default or miscarriage of a third person. It was not an original promise founded on a considera-tion moving to the defendant, but was altogether collateral to the previous demand on the intestate. Where an engagement is made by one, relative to the duty or liability of another, but not to secure or perform the same duty or liability, this is call-ed an original undertaking, and not within the statute.—1 Sw. Dig. 253. Here the promise was to pay the same debt which the plaintiff claimed against the estate of Rich. And whatev-er consideration there was for this promise, was for the benefit of the estate, and not of the defendant. Every promise to pay the debt of another, which is still subsisting, must, at common law, have a consideration to support it; and since the statute, it must also be in writing.—Bul. N. P. 281.—Stark. Ev. 873.—1 Saund. R. 210.—2 Wils. 94.—1 Com. Cont. 59.— 4 Bos. & Pul. 127.—4 John. R. 422—12 *Ib.* 291.—2 B. & A. 613.—5 East. 10.—4 B. & A. 595.

We also contend, that after the arbitrators had once met and adjourned to a particular day, their neglect to meet on the day appointed put an end to their authority, and that they could not proceed anew without the consent of the parties.

*Merrill & Spalding, contra.*—There is no doubt that a *chose* in action is assignable in equity, and it is now well settled that a court of law will protect a right in equity, and such right in equity is a sufficient consideration to support a promise. The manner of assignment is perfectly immaterial. It may be by parol or in writing.—1 Sw. Dig. 434.

In this case, the writings amounted to a complete assignment in equity, and were a full authority to demand and receive pay-ment; and without doubt a discharge by the plaintiff would have extinguished the demand.

In reference to the next exception, the declaration alleges that the plaintiff made application to renew the commission— that the judge had authority to renew it, and was about pro-ceeding on the application to do so. The statute is silent as to the manner of applying; it only provides, that the judge shall have authority, " on application made within six months after the expiration of said commission, on good cause being shown, to renew such commission," &c. The case, however, will not be varied, should we concede that the judge had no authority

to renew the commission. For it turns out that the plaintiff had an equitable claim, which, united with the considerations alleged and proved, will sustain the promise of the defendant. These considerations moved between the plaintiff and defendant, and were, that the plaintiff would withdraw his application, and that he would refer his claim to arbitration. Both these considerations were such as to involve an inconvenience and expense to the plaintiff, and an advantage to the defendant. On the one hand, the plaintiff was induced to relinquish his remedies against the estate, and incur the trouble of an administration, and on the other, an impending embarrassment in settling the estate was prevented. Principles even more comprehensive than we are obliged to contend for in this case, have been well settled. Thus, the release of any equitable right, the assignment of an uncertain debt, the compromise of a doubtful right, the suspension or forbearance of a right, or any possibility of a loss, occasioned to the plaintiff by the promise of another, is a sufficient consideration for such promise, and will make it binding, although no actual benefit accrues to the party undertaking.—1 Sw. Dig. 190 & 192.—1 Com. Cont. 12.— 1 Saund. R. 211. So mutual promises are good considerations for each other.—1 Sw. Dig. 193.—1 Com. Cont. 13.— 8 John. R. 236.

It is believed that the statute of frauds furnishes no objection to the right of recovering in this case. The defendant did not promise as administrator: the contract was personal, and the action is brought against him in his personal capacity. The promise is founded on a new consideration moving between these parties; and this, if true, is a sufficient answer to the objection.—1 Vt. R. 57.—1 Sw. Dig. 247.—1 Com. Cont. 465.—1 T. R. 691.

If then the undertaking of the defendant is not void, as a promise by an administrator to charge his own estate, neither is it invalid as a promise for the debt of a third person. The reason of this grows out of the consideration, and has been explained. Kent, Ch. J. says, "Where the promise to pay the debt of another arises out of some new and original consideration of benefit or harm, moving between the newly contracting parties, it is not a case within the statute."—8 John. R. 39—See also 15 Ib. 425, 18 Ib. 12.—Fell Guar. 16-17.—17 Mass. 122.— 1 Com. Cont. 51-2.

Washington,
.March,
1831.

Harrington
vs.
Rich.

. The opinion of the court was delivered by .

Royce, J.—Some of the questions now discussed have occasioned the court no difficulty. By the submission, the arbitrators acquired authority or jurisdiction over the subject matter submitted, which had not been revoked at the time of appointing their last session ; nor had such a period elapsed as to afford any presumption that the plaintiff had abandoned his claim. As no time appears to have been limited for the arbitrators to make and publish their award, it was their duty, at the request of either party, to proceed within any reasonable time.

We have as little doubt of the competency of the evidence admitted, relating to the plaintiff's application for a renewal of the commission. Had the application been followed by any proceeding of the probate court upon it, the record of that court would have been the proper evidence of both. But the object was merely to establish the fact, that application was made to the probate judge ; and not to show any step taken, or proceeding had, which would necessarily have become a matter of record.

The order drawn by Willard and Rich in favor of McCloud, does not, on its face, import a sale or transfer of the debt for which it was drawn. It authorised McCloud to receive the amount of the debt from Rich, but was silent as to the character in which he was to hold the money ; whether in his own right, or as agent of Willard. McCloud appears never to have acted on the order by presenting it for acceptance and payment, nor did he, as an agent might be expected to do, return it to Willard. He kept it for more than five years, and then by his own endorsement transferred it to Allen. And this must have been done in the presence of Willard, and with his knowledge ; since his name appears as a witness to the endorsement. These facts are not easily reconciled with the supposition, that the order was meant to create a mere agency, or that the transfer by McCloud was intended to operate only as a secondary authority from Willard, to be exercised for his benefit. They rather imply an interest in McCloud, recognized by Willard. The case also states, that no claim to this debt appeared to have been asserted by Willard, from the time of giving the order in A. D. 1822. On the whole, we incline to the opinion, that the jury were rightly permitted, upon the order, and the pecu-

WASHINGTON,
*March,*
1831.

Harrington
*vs.*
Rich.

liar circumstances connected with it, to find the several assignments of the debt, as alleged in the declaration.

The remaining subject of inquiry is, the validity of the defendant's promise, as affected by the statute of frauds. All question as to the sufficiency of the consideration to render the promise binding on the defendant personally, aside from the statute, is purposely avoided. The point was not distinctly taken in argument on the part of the defendant, nor is it necessarily involved in the decision about to be made. The statute of November 9th, A. D. 1822, (answering, in part, to the 4th section of 29 Charles II. ch. 3,) has, among other things, enacted, " That no suit, in law or equity, shall be brought or " maintained, upon any contract or agreement hereafter to be " made, whereby to charge any executor or administrator, upon " any special promise, to answer damages out of his own es-" tate ; or whereby to charge the defendant upon any special " promise to answer for the debt, default, or miscarriage of an-" other person ;"——" unless the contract or agreement, upon " which such action shall be brought, or some memorandum or " note thereof, shall be made in writing, and signed by the par-" ty to be charged therewith, or some other person thereunto " by him lawfully authorized." In principle, the two classes of undertakings here mentioned, are very nearly allied. And but for the fact, that in a qualified sense the executor or administrator personates the real debtor, (his testator or intestate,) they might be treated as identical. There is no occasion in this case to consider them separately. The promise of the defendant being by parol without writing, being a promise in his personal or individual capacity, and relating solely to a claim against the estate of Rich, and not to any private debt of his own, must be regarded as embraced by the statute, unless it can be taken out of its operation by some settled rule of exception. The statute has been held not to invalidate the contract, where the party making the promise has assumed some other duty, and not the payment of the very debt which was due from the third person. This was the ground of decision in *Reid* vs. *Nash*, 1 Wils. 305 ; and in the case in Ambler, where the defendant promised, in consideration of being let in as co-administrator with another, to make good any deficiency of assets. So, where the transaction amounts to a purchase of the debt, which is to be kept on foot for the benefit of the par-

WASHINGTON,
March,
1831.

Harrington
vs.
Rich.

ty promising—4 Bos. & Pul. 124; and where the party receiving the promise, is induced by it to give up a lien upon property for his debt, as in the case of the landlord about to distrain for rent, 3 Bur. 1886—of the carriage-maker, 3 Esp. R. 87—of the policy broker, 2 East. 326—of the sheriff releasing goods in execution, 1 Salkeld; and many others. Again, where the promissor is already liable for the debt, either alone, or jointly with others, 5 Mod. 205.—1 Esp. R. 162. None of these grounds of exception appear to comprehend the present case. This was not an undertaking for any distinct or collateral object, but a direct promise to pay the demand on the estate, if the arbitrators should adjudge it to be due. In this respect the case resembles 2 B. & A. 613, and 2 Day, 457. The terms of the contract import no intention to purchase the claim, but simply to pay and satisfy it. Nor did the plaintiff surrender any lien on property, or other collateral means of satisfaction in his hands: he only discontinued his suit, as in *Fish* vs. *Hutchinson*, 2 Wils. 94. And although, as administrator, the defendant was subject to a contingent responsibility in regard to this debt, it was not of such a character as the rule requires. That contemplates a personal liability. To hold otherwise, would in effect repeal the statute, so far as it relates to executors and administrators.

It is also said, that if in taking the new promise the original debt becomes extinguished or discharged, the promise is not within the statute.—1 B. & A. 297. This assumes that the statute operates only on collateral undertakings, and therefore has no effect, unless the demand continues in force against the party previously liable. I am not aware that this doctrine has been settled under our statute. The question was raised in *Livingston* vs. *Wilkinson*, which came before the court in Franklin county, at the January term, A. D. 1828; but the case has not been reported, and is understood to have turned on another point. The present case does not require us to pass upon it. Here was obviously no discharge of the estate, at the time of giving the promise. To prove this, it is only necessary to suppose, that the power of the arbitrators had been revoked within the six months allowed by law for opening the commission. In such an event the plaintiff might unquestionably have proceeded against the estate. And indeed, a mere agreement to arbitrate, and perform the award to be made, is never a discharge of the cause of action submitted; because

the right of revocation is a mutual right, and incident to the nature of an arbitration.

WASHINGTON
March,
1831.

Harrington
vs.
Rich.

Again it is said, that where a promise to pay the debt of another is founded on a new and original consideration, moving between the newly contracting parties, the promise is not affected by the statute.—Chit. Cont. 203.—8 John. 39.   This, as a distinct rule, is to be received with caution.   The instances adduced in illustration of it, are properly classed under other heads of exception already noticed.   They are cases where the new contract was not limited to the debt, but was apparently induced by another object, as the purchase or extinguishment of some collateral right, interest, or lien of the creditor. To whatever extent the rule should be adopted, we are not satisfied of its application to this case.   Here was no consideration moving to the defendant, but all the contemplated benefit on that side resulted to the estate.   The plaintiff, it is true, incurred delay and inconvenience.   But such is also the fact, whenever a promise is given to guaranty the debt of another, in consideration of forbearance : yet such a promise is within the statute.—2 Stra. 873.   The requisites of the statute are not to be confounded with those of a valid promise at common law.   A consideration is essential independently of the statute, which has added the necessity of written evidence.   The case of *Moor* vs. *Wright*, 1 Vt. R. 57, is inapplicable to the point under consideration, as the cause of action in that case accrued before the present statute was in force.   The promise declared upon must be regarded as equally within the statute, whether considered as a guaranty for the debt of another, or as a promise by an administrator to answer damages out of his own estate.

Judgment of county court reversed, and new trial granted.