ELISHA A. PACKER & OTHERS *vs.* WILLIAM J. BENTON.

Where a person not before liable agrees to pay the debt of a third person, and as a part of the arrangement the original debtor is discharged from his indebtedness, the agreement is not within the statute of frauds.  Otherwise if the original debtor continues liable.

Where the party thus undertaking to pay the debt of a third person agreed " to pay and guarantee " the debt, it was held that the word " guarantee " was not to be understood in a technical sense and that the agreement was an absolute agreement to pay, and that indebitatus assumpsit would lie.

A compromise agreement signed by a part only of the creditors of a debtor, including the plaintiffs, which was to be void unless signed by all, held inadmissible to affect a different agreement afterwards entered into between the plaintiff and the debtor.

GENERAL ASSUMPSIT for money had and received; brought to the Superior Court in New Haven county, and tried to the jury on the general issue, with notice, before *Pardee J.*

Upon the trial the plaintiffs, who were partners under the

name of E. A. Packer & Co., offered evidence to prove, and claimed to have proved, that Filley & Co., doing business as coal dealers in New Haven, were on the 18th day of May, 1859, in failing circumstances, and unable to pay their debts in full; that the plaintiffs were their creditors to the amount of $1,975.37 and were the largest creditors in the city of New York; that the defendant, a resident of New Haven, proposed to the plaintiffs, in view of the fact that they were creditors to so great an amount, that they should advance to him, the defendant, within thirty days, a sum of money which, with the proceeds of coal belonging to Filley & Co. to be sold within that time, would be sufficient to enable him to pay the other New York creditors of Filley & Co. fifty cents on a dollar and to compromise and pay off the claims of their creditors residing in New Haven, some of which claims the defendant was to pay in full; and that if the plaintiffs would lend him the money necessary to buy up the debts against Filley & Co. other than the debt due the plaintiffs, Filley & Co. would transfer and deliver to him all their partnership assets, and that he could sell them for money enough to pay the plaintiffs seventy-five cents on a dollar, and probably the full amount of their debt; that thereupon about the first of June, 1859, Filley & Co., the plaintiffs, and the defendant, agreed orally that Filley & Co. should transfer and deliver all their partnership assets to the defendant, and that the plaintiffs should lend money enough to the defendant to enable him to obtain a discharge from all the other creditors, and that the defendant agreed to pay off all the debts against Filley & Co. other than the debt of the plaintiffs, and discharge Filley & Co. from all such debts, and take all their partnership assets and convert the same into money, and to borrow of the plaintiffs money sufficient to enable him to pay off all the debts of Filley & Co. as aforesaid, and then repay to the plaintiffs the money thus to be loaned by them, together with seventy-five cents on a dollar of their debt, which the defendant agreed to pay and guarantee to the plaintiffs, and the further sum of twenty-five cents on a dollar of their debt if the assets of Filley & Co. should produce so much money after deducting the

defendant's reasonable expenses in converting the assets into cash, and that Filley & Co. were thereby to be discharged from their debt to the plaintiffs ; and the plaintiffs offered evidence to prove, and claimed to have proved, that Filley & Co. did transfer and deliver to the defendant all their partnership assets, and that the plaintiffs lent the defendant the sum of $1,477.80, and that the defendant bought up and discharged all the other debts of Filley & Co. and converted their assets into cash and made sundry payments from the proceeds to the plaintiffs, (as shown by a statement exhibited,) leaving due to the plaintiffs the sum of $569.73.

The defendant denied the claim of the plaintiffs, and offered evidence to prove, and claimed to have proved, that Filley & Co. first employed him to go to New York and procure for them an extension of time upon their indebtedness, about May 1st, 1859; that about the middle of May, Filley & Co. again sent him to New York for the same purpose, and that their creditors then refused to extend the time of payment of their debts, and that about the 1st day of June, 1859, Filley & Co., the defendant, and the plaintiffs, orally agreed that Filley & Co. should transfer and deliver all their partnership assets to the plaintiffs, and that the plaintiffs employed the defendant as their agent to receive the property and convert it into money, and to compromise with all the other creditors and pay their several claims, and that the plaintiffs agreed with the defendant to advance to him the money necessary to compromise with and procure discharges from all other creditors in behalf of Filley & Co., and that the defendant agreed as such agent to receive the money so to be advanced to him to pay the other creditors, and to pay their several claims, and to take all the partnership assets of Filley & Co. and convert them into money, and after deducting his reasonable expenses and compensation to repay the plaintiffs the money advanced by them, and if money enough remained in his hands, to pay them seventy cents on a dollar of their debt against Filley & Co. and the surplus, if any, to be paid back to Filley & Co.; that Filley & Co. had transferred their partnership assets to him, the defendant, as the plaintiff's agent, and

that he had converted them into money as far as he was able, and had received from the plaintiffs said sum of $1,477.80 wherewith to pay off the debts due to the other creditors; that he had paid the same and had procured discharges for said Filley & Co. therefrom; that he had made sundry payments to the plaintiffs, and had overpaid them by mistake and by reason of his inability to collect a debt for coal, the sum of $350; and that the plaintiffs were still indebted to him for his services as such agent to the amount of $300; and he claimed to recover these sums from the plaintiffs.

The plaintiffs denied the truth of the foregoing claims of the defendant, and claimed from the evidence in the case that, if he was their agent as he claimed, he had not fully accounted as such agent for the money received by him for his principals, and that he was indebted to them as such agent in the sum of $500 and interest.

The defendant objected to the evidence introduced by the plaintiffs upon the ground that it did not support the declaration, but tended to prove a contract wholly different from the one declared upon and one which could only be admissible under a special count setting out the agreement. The court admitted the evidence subject to the defendant's exception.

The defendant further claimed that no evidence of such an agreement by the defendant to pay the whole or any part of the debt of Filley & Co. to the plaintiffs should be received, because 1st, there was no count in the plaintiffs' declaration to justify such proof; 2d, that such agreement if so made was void, not being in writing; 3d, that no action at law could be maintained upon such an agreement, even if it had been in writing. The court admitted the evidence subject to the defendant's exceptions.

Upon the trial of the case the defendant introduced the following writing, which, it was agreed, was signed by all the creditors of Filley & Co. in New York, but not by their other creditors, and that the defendant knew that fact at the time of entering into the oral agreement before stated.

" Whereas the firm of W. Filley & Co., a partnership located and doing business in New Haven, Connecticut, are in failing

circumstances and unable to pay their debts in full, we the undersigned, creditors of the said W. Filley & Co., agree to compound our claims with said company for fifty cents on a dollar cash this month, regarding it more advantageous for us, and better for said company, than to compel them to make an assignment. Unless all the creditors agree to compound this obligation to be void. Dated at New Haven, the 18th day of May, 1859." Signed by E. A. Packer & Co. and sundry others.

Upon the introduction of this writing the defendant asked the court to charge the jury that if the defendant ever promised the plaintiffs to pay them seventy-five cents on a dollar of their debts against Filley & Co. the same was a corrupt and fraudulent agreement as against other creditors of Filley & Co. who signed the agreement, and therefore void. The court said to the jury that they might leave the writing out of consideration. The defendant also requested the court to charge the jury that they should not consider in making up their verdict any of the evidence offered by the plaintiffs, of the agreement claimed to be proved by the plaintiffs, for the reasons stated in the objections to the evidence when it was offered. But the court charged the jury that they might take such evidence into consideration.

The jury returned a verdict for the plaintiffs, and the defendant moved for a new trial for errors in the rulings and charge of the court.

*Watrous* and *Rogers*, in support of the motion.

1. The agreement under which the plaintiffs claim was special, and was an agreement to guarantee and not an absolute agreement to pay, and it will not sustain any of the common counts in assumpsit. *Tuttle* v. *Mayo*, 7 Johns., 132 ; *Linningdale* v. *Livingston*, 10 id., 36 ; *Keyes* v. *Stone*, 5 Mass., 391 ; *Ways* v. *Wakefield*, 7 Verm., 228.

2. The agreement was within the statute of frauds and therefore void because not in writing. *Clapp* v. *Lawton*, 31 Conn. 95, and cases there cited.

3. The compromise agreement of May 18, 1859, signed by the plaintiffs and other creditors of Filley & Co., should have been received, both as evidence against the different agreement claimed by the plaintiffs to have been made, and as tending to show that the latter agreement if made was a fraud upon the other creditors.

*Bronson,* contra.

BUTLER, J. It appears from the motion, that the defendant upon the trial in the court below objected to the evidence offered by the plaintiffs to sustain the action, on the ground, 1st, That there was no count in the plaintiff's declaration to justify such proof; 2nd, That the agreement sought to be proved, if made, was void, not being in writing; and 3d, That no action at law could be maintained upon such an agreement, even if in writing. The evidence having been admitted, the court were requested to charge the jury to the same effect, and the court declined to charge as requested. In thus receiving the evidence objected to, and declining to charge, the defendant insists that the court erred. We think otherwise.

1. We think, in the first place, that by the contract as claimed by the plaintiffs, and which we must presume to have been found by the jury, the defendant became indebted to the plaintiffs, by an assumption of the debt of Filley & Co., to the extent of seventy-five cents on the dollar of that debt, and it is elementary law that where a sum certain is due on a simple contract, indebitatus assumpsit will lie to recover it. It is true that the language of the motion in respect to the assumption claimed is that " the defendant then and there agreed to pay and guarantee the debt to the plaintiffs," but it is clear from the whole statement of the contract, that it was intended to be an absolute contract to pay the debt, and that the word " guarantee" as used in that connection is not to be understood in a technical sense. We see no objection therefore to the form of the action.

2.   And we think, in the second place, that the evidence was properly admitted, and the contract provable although it rested in parol.

We have no disposition to relax the rules of construction applicable to the statute of frauds, or in any manner to weaken that statute.   Our views on that subject are fully expressed by Judge Dutton, in *Clapp* v. *Lawton*, 31 Conn., 95 ; and if this case was as claimed, analogous to that, we should come to the same conclusion in respect to it.   But this case differs essentially from that.   There a third party received the property of the debtor and promised him generally to pay his debts. None of the creditors were parties to the arrangement, and the original indebtedness continued as before.   Here the contract was tripartite, between the debtor, a creditor, and a third person ; and it contemplated the discharge of the original debtor, and a new obligation, by the third party, to the particular creditor.   Such new obligation and indebtedness is not within the statute of frauds.

In *Turner* v. *Hubbell*, 2 Day, 457, the distinguished counsel for the defendant in error deduced from the cases which had then occurred under this branch of the statute, the following definition of the promise intended by it, to wit : " An undertaking by a person, *not before liable,* for the *purpose* of securing or performing the *same* duty for which the party for whom the undertaking is made, is, *at the same time,* liable," and it was adopted by the court.   With a single modification that definition furnishes as perfect a test as has ever been, or, we think, can be devised. . The modification required is this : In the case of *Williams* v. *Leper,* 3 Burr., 1886, the promise to pay the debt was made after the original debtor had been discharged by reason of a distress, and the counsel in *Turner* v. *Hubbell* seem to have assumed that a contract to pay the debt of another would be within the statute of frauds if the original debtor was liable at the time the promise was made.   But it is now well settled that if the original debtor is discharged by the new contract it is not within the statute.   See the cases cited by Judge Dutton in his revision of Swift's Digest, page 248.   The foregoing defi-

nition may be modified therefore, so as to read : " An under-
taking by a person *not before liable*, for the *purpose* of secur-
ing or performing the *same* duty for which the party for
whom the undertaking is made *continues* liable. " Applying
this test to the case in hand, it is obvious that the objection
of the defendant ought not to prevail.

It was the *purpose* and *effect* of the tripartite contract in
question to discharge the original debtors in consideration of
their giving up their property to the defendant, as well as
to onerate the defendant, in consideration of that discharge,
the assent of the plaintiff to the delivery of the property to the
defendant, and of his agreement to loan the funds necessary
to enable the defendant to purchase the debts and carry out
his speculation. As the original debtors did not *continue*
liable, an essential element of the test was wanting, and the
contract was not within the statute.

3. And we also think that the court did right in exclud-
ing the paper offered from the consideration of the jury. It
was of no importance in respect to the issue between the par-
ties. It was confessedly an inoperative paper, and did not
bind the plaintiffs, because not signed by all the creditors.
Nor did it tend to prove any fact material to the issue be-
tween them. The agreement between them, whether intend-
ed to make the defendant a principal and substitute debtor,
as the plaintiffs claimed, or whether it constituted the de-
fendant the agent of the plaintiffs, as he claimed, was made
without reference to the paper, and with knowledge that it
was inoperative. Having no connection with the agreement
as inducement, consideration, or subject matter, it had no
connection with or bearing upon the case. And being an
inoperative paper, no fraud affecting the subsequent agree-
ment between the parties could be predicated upon it. It was
therefore properly withdrawn from the consideration of the
jury, as tending to confuse and mislead them.

A new trial must be denied.

In this opinion the other judges concurred.