CHARLES H. DILLABY vs. BETSEY A. WILCOX.

New London Co., Oct. T., 1890.  ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The clause of the statute of frauds which relates to a special promise of an executor or administrator to answer out of his own estate, has reference to claims against the estate for which the executor or administrator was liable only as the representative of the decedent, and which, but for the promise, he would have been liable to discharge only in due course of administration and to the extent of the property that had come into his hands.

The provision of the statute which relates to a special promise to answer for the debt, default or miscarriage of another, invalidates such a promise where not in writing, of a person not before liable, to pay the debt of a third person, for which the original debtor remains liable. The continued liability of the original debtor is essential to the application of the statute to the case.

Whenever the promise is merely collateral to the original debt, it must be in writing, whatever the consideration; and it remains collateral so long as the original debt still subsists as the principal debt.

The defendant was administratrix of the estate of W, and as such held a mortgage on certain personal property of G. G failing to pay his taxes, the plaintiff, tax collector, threatened to levy his tax warrant on the mortgaged property. To prevent this the defendant promised to pay the taxes and the plaintiff forbore to levy, but G remained liable for the taxes. Held that the promise was within the statute of frauds.

[Argued October 21st, 1890—decided January 19th, 1891.]

ACTION upon a parol promise of the defendant to pay certain taxes due from a third person, on the promise of the plaintiff, a tax collector, to forbear to levy on certain prop-

erty upon which the defendant as administratrix held a mortgage; brought to the Court of Common Pleas in New London County, and tried to the court before *Crump, J.* Facts found and judgment rendered for the plaintiff, and appeal by the defendant. The case is fully stated in the opinion.

*S. Lucas,* for the appellant.

1. The promise, not being in writing, was of no validity under the statute of frauds. Gordon Wilcox remained liable to an action brought under the statute at the time this suit was commenced. *City of Hartford* v. *Franey,* 47 Conn., 82. An undertaking to be within the statute of frauds must be an undertaking by a person not before liable, for the purpose of securing or performing the same duty for which the party for whom the undertaking is made continues liable. *Packer* v. *Benton,* 35 Conn., 349. The promise sought to be enforced in this suit comes clearly within that rule and within the statute of frauds. Gen. Statutes, § 1366. The plaintiff had no lien on this property, and he parted with nothing. He could not have held it as against the defendant. *Fuller* v. *Day,* 103 Mass., 481. There is no reason therefore why she should not be protected by the statute and the court erred in not so holding.

2. The court erred in not holding that there was no consideration for the promise. The title to this personal property was in the defendant and her co-administratrix, that is, in the estate of Wm. Wilcox. Jones on Chattel Mortgages, 2d ed., § 699; *Ashmead* v. *Kellogg,* 23 Conn., 70, 76; Gen. Statutes, § 3016. And they had the right to the possession as against the plaintiff. Jones on Chattel Mortgages, § 453; *Fuller* v. *Day, supra; Gaar, Scott & Co.* v. *Hurd,* 92 Ill., 315; *Cooper* v. *Corbin,* 105 id., 224; Desty on Taxation, 738. It nowhere appears in the case that if the plaintiff had not delayed to levy he could have collected the taxes. He obtained this promise by a threat to do that which he had no right to do to the prejudice of the holders of the mortgage. The forbearance was therefore not only a worthless con-

sideration as matter of fact, since the property sold for less than the mortgage debt, and the plaintiff had no right to the possession as against the defendant, but the promise was obtained by a wrongful threat, and the forbearance was also a worthless consideration in legal contemplation, since the rule is too well known to need emphasis that forbearance of a worthless or ill founded claim is no consideration. Langdell's Summary of Contracts, § 56 ; Chitty on Contracts, 38.

*J. Halsey* and *W. A. Briscoe*, for the appellee.

1. The promise of the defendant was an original undertaking and therefore not within the statute of frauds. While it is true that the taxes in question were not a specific lien upon the personal property, nevertheless the plaintiff had a right to levy upon the equity of redemption in the property and to sell it for the taxes. In consideration of his promise to relinquish such right, the defendant undertook to pay the taxes when the property should have been sold under foreclosure. It was not a promise as administrator to answer for the debt of her decedent, because there was no such debt.; but an original undertaking, in consideration of the relinquishment of a right by the plaintiff, at the defendant's request and for her benefit. Browne on Statute of Frauds, § 204 ; *Burr* v. *Wilcox*, 13 Allen, 273.

2. Forbearance at the request of the defendant, or any act done at the defendant's request and for her convenience or to the inconvenience of the plaintiff, is a sufficient consideration for the promise. *Burr* v. *Wilcox, supra.* As appears from the finding, the plaintiff at the request of the defendant forbore to levy, and the defendant upon the sale secured the benefits accruing therefrom.

SEYMOUR, J. The plaintiff in this case was collector of taxes for the town, city and central school district of Norwich, and had in his hands warrants for the collection of taxes assessed in favor of each of them upon property of one Gordon Wilcox. The defendant and her mother were the administrators of the estate of William Wilcox, deceased,

and, as such, held a mortgage on certain personal property of Gordon Wilcox, consisting of printing presses and material in the possession of and used by him in Norwich.

The plaintiff was unable to procure payment of the taxes from Gordon Wilcox, and applied to the defendant for the payment thereof, and threatened to levy upon said mortgaged property unless they were paid. The defendant promised the plaintiff that if he would forbear to levy upon the property she would pay the taxes as soon as the property should be sold under the judgment of foreclosure which she and her mother, as administrators aforesaid, had obtained upon the mortgage. The plaintiff, in consideration of this promise of the defendant, promised to forbear, and did forbear to levy upon the property, and the same was sold under the judgment of foreclosure and was bid in for the defendant.

. The defendant, after the sale, refused to pay the amount of the taxes to the plaintiff and they have not been paid.

The suit, it will be observed, is against Mrs. Wilcox personally. No pleadings subsequent to the complaint appear to have been filed, but the finding shows that the defendant denied that she made the promise upon which the action was brought. She also claimed that the promise declared on was within the statute of frauds, and, not being in writing, no recovery could be had upon it; and further that there was no consideration for the promise; and asked the court so to rule; but the court refused so to do and rendered judgment for the plaintiff, from which the defendant appeals.

Was the promise, which the court finds was made, within the statute of frauds?

The statute provides that " no civil action shall be maintained upon any agreement whereby to charge any executor or administrator upon a special promise to answer damages out of his own estate, or against any person upon any special promise to answer for the debt, default or miscarriage of another, * * * unless such agreement or some memorandum thereof be made in writing and signed by the party to be charged therewith or his agent." General Statutes, § 1366.

The first clause has reference to promises by an executor or administrator to answer out of his own estate for a claim against his decedent—some liability resting upon the executor or administrator strictly in his representative character and which, but for the promise, he would have been liable to discharge only in due course of the administration of the estate. To change the expression—this clause of the statute covers a special promise made by the executor or administrator to pay, out of his own estate, what, (being the legal representative of the party originally liable) he is already, in that representative capacity, under a liability to pay to the extent of the property which has come into his hands. "The particular object of this provision," says a recent writer upon the statute, "was evidently to guard executors and administrators against being held to a personal liability to pay debts, legacies or distributive shares in consequence of a wilful or mistaken perversion of expressions of encouragement which they may have used in conversation with claimants and which were not justified by the ultimate result of administration of the assets in their hands." Throop's Treatise on the Validity of Verbal Agreements, p. 87. However that may be, the suggestion illustrates the nature of the promise referred to in this section. The promise proved, in the case before us, was to answer for the debt or default of Gordon Wilcox, a third party, and is a promise to which that clause has no reference. The suggestion that the defendant, if compelled to pay the judgment, can repay herself out of the assets of the estate, does not tend to bring the promise within the clause. Most of the personal obligations of an executor contracted in the course of his administration, says the court in *Chambers* v. *Robbins*, 28 Conn., 550, are proper charges against the estate in the final settlement of his account, but they are none the less his private debts for which he is alone liable in his private capacity. In *Pratt* v. *Humphrey*, 22 Conn., 317, a leading case upon this clause, the promise was to pay a debt due from the estate of which the defendants were administrators—an entirely different case from the one at bar.

The second clause of the statute relates to the special promise of any person to answer for the debt, default or miscarriage of another. An immense amount of litigation has arisen over its construction. It is impossible to reconcile the decisions which have been made under it. Almost any theory of its scope and meaning can find some case to support it. The most careful text-writers have acknowledged their inability to find anything like uniform rules of construction in the conflicting decisions which have been rendered. It has even been stated that the law upon it is in a state of hopeless confusion. It is all the more satisfactory, therefore, that our own court seems, so far at least as the points involved in this case are concerned, to have found and adopted a rule which has proved satisfactory—a rule which, we think, substantially settles the question before us.

The promisor, to briefly re-state the facts, was one of the administrators of William Wilcox's estate; a fact, as we have seen, of no significance unless to show a motive for her promise, founded on a fancied advantage to the estate of her decedent. The promisee was the collector of taxes, threatening to levy on personal property upon which he had no lien and on which William Wilcox's estate held a mortgage. The levy, if made, would of course have been subject to such mortgage. The party for whose debt or default the promise to answer was made was a delinquent tax-payer who, after the promise, continued liable for the taxes until paid. The suit, then, is by a tax-collector against a defendant who, in consideration of the plaintiff's forbearance to levy for a third person's tax on personal property on which an estate of which she was one of the administrators had a mortgage, promised to pay taxes due to Norwich town and city and a school district of the town from said tax-payer, the mortgagor of the property.

In *Packer* v. *Benton*, 35 Conn., 343, it is held that "where a person, not before liable, agrees to pay the debt of a third person, and, as a part of the arrangement, the original debtor is discharged from his indebtedness, the agreement is not

within the statute of frauds. Otherwise, if the original debtor continues liable."

We shall quote somewhat extensively from that case, as the rule therein established has subsequently been applied in *Pratt's Appeal from Probate*, 41 Conn., 191, and in *Gridley* v. *Sumner*, 43 id., 16, and is, as already suggested, decisive of the case now before us. Judge BUTLER writes the opinion, and, after contrasting the facts then before the court with those in *Clapp* v. *Lawton*, 31 Conn., 95, he says (p. 349:)— " Here the contract was tripartite, between the debtor, a creditor, and a third person ; and it contemplated the discharge of the original debtor and a new obligation by the third party to the particular creditor. Such new obligation and indebtedness is not within the statute of frauds. In *Turner* v. *Hubbell*, 2 Day, 457, the distinguished counsel for the defendant in error deduced from the cases which had then occurred under this branch of the statute, the following definition of the promise intended by it, to wit, ' An undertaking by a person *not before liable*, for the purpose of securing or performing the *same duty* for which the party for whom the undertaking is made is, *at the same time*, liable ; ' and it was adopted by the court. With a single modification that definition furnishes as perfect a text as has ever been, or, we think, can be devised. * * * The foregoing definition may be modified therefore so as to read—' An undertaking by a person *not before liable*, for the purpose of securing or performing the *same duty* for which the party for whom the undertaking is made *continues liable*.' Applying this test to the case in hand, it is obvious that the objection of the defendant ought not to prevail. It was the *purpose* and *effect* of the tripartite contract in question to discharge the original debtors in consideration of their giving up their property to the defendant, as well as to onerate the defendant in consideration of that discharge. * * * As the original debtors did not *continue liable* an essential element of the test was wanting, and the contract was not within the statute."

In the case now before us all the essential elements of the test are present and bring the promise within the statute.

The case of *Packer* v. *Benton* does not discuss the questions which might arise in that class of cases where the defendant, for his own use and advantage, procures from the plaintiff the surrender, release or waiver of a lien or security which the latter holds for a debt due him, upon the promise to pay the debt. In such cases it has been held, in a large number of cases, that the promise is not within the statute, though the original debt is not discharged, on the ground that the transaction amounts to a purchase from the creditor of such lien or security for a price which is the amount of the original debt, and that the relinquishment of the lien or security has inured to the defendant's benefit. In the leading case of *Fullam* v. *Adams*, 37 Verm., 391, it is held that "a verbal promise to pay the debt of another, where the original debt still subsists, is never legally binding, except where the promisor has received the funds or property of the debtor for the purpose of being so applied, so that an obligation or duty rests upon him, as between himself and the debtor, to make such payment, whereby his promise, though in form to pay the debt of another, is in fact a promise to perform an obligation or duty of his own." POLAND, C. J., who writes the opinion, says (p. 397,) that the cases which decide that where a creditor holds a security and surrenders it to a third person, for his benefit, upon his promise to be answerable for the debt, stand really upon the the same substantial principle.

It is stated in the text of the American and English Encyclopedia of Law, *in loco*, that, in a large and increasing number of the states of the Union, the promise, although made upon a new consideration of benefit to the promisor, is held to be collateral, whatever the intent of the parties, if the original liability remains; and a very large number of authorities are cited in support of the proposition.

It is to be noticed, as illustrating the difference in construction already alluded to, that in a recent case in New York, *White* v. *Rintoul*, 108 N. York, 222, it is stated, though under a *semble*, that a promise to pay a debt of another, antecedently contracted, where the primary debt still subsists,

Dillaby *v.* Wilcox.

is original and so valid within the statute of frauds, although
not in writing, when it is founded on a new consideration
moving to the promisor and beneficial to him, and when by
the promise he comes under an independent duty of paying
irrespective of the liability of the principal debtor. Curi-
ously enough this intimation of an opinion, for it amounts
to nothing more as reported, is made in a case where the
defendant was a creditor of a firm and was secured by a
chattel mortgage. The plaintiff was the holder of two notes
of the firm which were nearly matured. The defendant
disclosed the fact that he held the mortgage and promised
to pay the notes if the plaintiff would forbear for a time.
It was held that the promise was within the statute. The
court says:—"The plaintiff contends that the defendant
had a direct personal interest in procuring a forbearance to
sue the firm, which he explains in his brief, by saying, that
'if the plaintiff pressed the collection of his notes and did
not wait till the then next summer, the defendant would
lose his money, which had been loaned to the firm.' But I
do not discover a single fact in the case which tends to any
such conclusion. * * * It was a fear without a foundation,
a state of mind and not a result of existing facts seen in
their legal bearing. Delay on the part of the plaintiff is
not shown to have been of the slightest consequence to the
interest of the defendant." No more do we see in the case
before us a single fact which shows that a levy by the col-
lector, subject, as it must have been, to the mortgage, could
have injured the defendant or the estate she represented.
If she thought so "it was a state of mind and not a result
of existing facts seen in their legal bearing," and the deci-
sion of the case from which we are quoting seems to unmis-
takably favor her defense, though the dictum seems adverse.

It is said in Browne on the Statute of Frauds, § 214*e*, that
"the mere passing of a new and independent valuable con-
sideration between the plaintiff and defendant does not take
the case out of the operation of the statute; and, so far as
some of the decisions depend upon the contrary, they can-
not be regarded as law. Every contract of guaranty re-

quires a valuable consideration moving from the party to whom the guaranty is given. There can be no sensible distinction made between 'new and independent' considerations and any other valuable considerations; and the general proposition that 'a new and independent consideration moving between the parties to the contract of guaranty,' takes it out of the statute, simply nullifies the statute. The distinction is between a mere valuable consideration for the defendant's promise of guaranty, and that transfer of value which creates an original obligation on the part of the defendant, the measure of which is, by the agreement of the parties, the defendant's payment of the third party's debt."

It was suggested that the promise relied on was an original undertaking. We cannot look upon it as such within the proper meaning of that word. It is a new promise to pay the already existing debt of a third party. The court say in *Molloy* v. *Gillett*, 21 N. York, 412:—"The words 'original' and 'collateral' are not in the statute of frauds; but they were used at an early day; the one to mark the obligation of a principal debtor, the other that of the person who undertook to answer for such debt. This was no doubt an accurate use of language; but it has sometimes happened. that, by losing sight of the exact ideas represented by these terms, the word 'original' has been used to characterize any new promise to pay an antecedent debt of another person. Such promises have been called original because they are new; and then, as original undertakings are agreed not to be within the statute of frauds, so these new promises, it is often argued, are not within it. If the terms of the statute were adhered to or a more discriminating use were made of words not contained in it, there would be no danger of falling into errors of this description."

Where the person undertaking to pay the debt of another, receives property or funds of the debtor for the purpose, his promise is in no proper sense an undertaking to answer for the debt of another, but an undertaking to apply the property or funds to such payment. The undertaking becomes then an independent one, and the continuing obligation of

the debtor becomes in a sense collateral to it. Whenever the new promise is merely collateral to the original debt, it must be in writing, whatever the consideration, and it remains collateral so long as the original debt still subsists as the principal debt.

The decision at which we have arrived makes any discussion of the other questions presented on the record superfluous.

There is error in the judgment appealed from, and it is reversed.

In this opinion the other judges concurred.