Clapp v. Lawton.

————◄◄⊙►►——— · -

# SUPREME COURT OF ERRORS.

## NEW HAVEN COUNTY, SEPTEMBER TERM, 1862.

Present,

HINMAN, C. J., SANFORD, BUTLER AND DUTTON, Js.

———·———

JOHN S. CLAPP AND OTHERS *vs.* THOMAS LAWTON AND ANOTHER.

A promise by *A* to *B*, in consideration of property delivered to him by *B*, to pay sundry debts of *B*, is, in its relation to the creditors so to be paid, within the statute of frauds, and must be in writing.

Where such a promise is in writing, an action upon it can not be maintained by the creditors so to be paid.

Where *A* received from *B* sundry claims to be collected, with an agreement to apply the net avails to the payment of certain debts of *B*, and the claims had been collected to the amount of $1,000, but the debts to be paid were $1300, and it did not appear what was to be deducted for the expenses of collection, it was held that the remedy of a creditor entitled to his proportionate share was in chancery, and not by an action of assumpsit.

ASSUMPSIT, upon sundry special counts, alleging a promise of the defendants, partners under the name of Lawton & Wright, to pay a debt due to the plaintiffs from the firm of Faulkner

& Wright ; with a general count for money had and received by the defendants to the use of the plaintiffs.

The case was tried in the superior court, under the general issue, closed to the court, before *Waldo, J.*

Upon the trial the plaintiffs proved the following facts. On the 3d day of September, 1859, William Faulkner and Robert Wright were partners under the name of Faulkner & Wright, and as such partners were the owners of a newspaper called the New Haven Morning News, which they had been conducting for several months previously. They had contracted debts in the business to the amount of about $1,300, among which were the notes of the plaintiffs described in the declaration, amounting to the sum of $632.70. They had, besides their press, type, engine, and fixtures belonging to their establishment, debts due them amounting to about $1,600. On the 3d of September, 1859, Faulkner sold to Thomas Lawton, the defendant, his interest in the establishment, and conveyed the same to him by a written instrument. At the time of this sale the parties had a schedule of the balances due the firm of Faulkner & Wright, and the gross amount of their indebtedness. The books of the firm were also present and contained an account of the debts due the plaintiffs, the notes of the plaintiffs being correctly described in their account of bills payable. Faulkner & Wright dissolved their co-partnership on the same day, and on the 5th of September published a notice of the dissolution in the papers in the city of New Haven. On the same day Lawton & Wright entered into co-partnership for the purpose of conducting the same newspaper under the name of Lawton & Wright. The new firm of Lawton & Wright took possession of all the material, presses, types, cases, forms, engine and its fixtures, and all other property belonging to the firm of Faulkner & Wright, and Lawton on the same day paid the persons who had been the operatives in the establishment, and who had claims against Faulkner & Wright. He subsequently paid a debt contracted by Faulkner & Wright for paper, amounting to about $100 ; and on the 3d of October, 1859, he paid $83.37 for rent due for the quarter ending on the 1st day of October.

The accounts due Faulkner & Wright, estimated at about $1,600, and the books on which they were entered, went into the hands of Lawton & Wright on the 3d of September, and were collected by them so far as they could be collected. Lawton & Wright opened new accounts with persons on their books in all new transactions, but they did not open any account with Faulkner, nor did they have any account in which they credited the firm of Faulkner & Wright with the money they collected on the accounts of Faulkner & Wright, but the money so collected was used by them as their own. The amount collected by them was about $1,000.

The plaintiffs claimed that at the time of the sale of Faulkner's interest in the establishment to Lawton, and as a part of the same transaction, Faulkner & Wright assigned their accounts to Lawton & Wright, and that Lawton & Wright then promised to pay the debts due from Faulkner & Wright, among which debts were the notes due the plaintiffs; and thereupon the plaintiffs offered in evidence the deposition of Faulkner, and the testimony of Wright, to prove that at the time of the disposition of Faulkner's interest in the establishment to Lawton, Faulkner & Wright assigned to Lawton & Wright their interest in the debts due the firm of Faulkner & Wright, in consideration of the parol agreement of Lawton & Wright with him, Faulkner, that they would assume and pay all the liabilities outstanding against the co-partnership of Faulkner & Wright, and that Lawton & Wright received and accepted the claims so assigned upon such promise to pay the liabilities of Faulkner & Wright, and that Lawton had no interest in the claims so assigned except by his promise to pay such outstanding liabilities; and that there was exhibited to Lawton & Wright at the time a written schedule of the debts due to Faulkner & Wright on the 1st of August 1859, amounting on their face to about $1,600, and a statement in gross of the liabilities of the firm, amounting to about $1,300. To the admission of this evidence the defendants objected, on the grounds: 1st. That the promise claimed, being a promise to pay the debt of another, could not be proved by parol. 2d. That an action would not lie in favor of the plaintiffs upon such promise.

But the court overruled the objections and admitted the evidence.

The court having rendered judgment for the plaintiffs, the defendants moved for a new trial.

*C. R. Ingersoll*, in support of the motion.

1. The promise alleged is within the statute of frauds, and parol evidence was not admissible to prove it. *Nelson* v. *Boynton*, 3 Met., 396 ; *Curtis* v. *Brown*, 5 Cush., 488 ; *Stone* v. *Symmes*, 18 Pick., 467 ; *Mallory* v. *Gillett*, 23 Barb., 610 ; *Turner* v. *Hubbell*, 2 Day, 457 ; *Lampson* v. *Hobarts' Estate*, 28 Verm., 697 ; *Alger* v. *Scoville*, 1 Gray, 396 ; *Williams* v. *Leper*, 3 Burr., 1886.

2. The plaintiffs can not maintain an action in their own names upon the promise, if it can be proved. There was no privity between them and the defendants. They were not named in the alleged agreement, and no particular debts were specified. *Dow* v. *Clark*, 7 Gray, 198. No part of the consideration moved from the plaintiffs, nor had they the exclusive beneficial interest in the subject of the promise. *Treat* v. *Stanton*, 14 Conn., 445 ; *Price* v. *Easton*, 4 Barn. & Ad., 443. Nor did the defendants receive the property under any trust. *Robb* v. *Mudge*, 14 Gray, 534. Nor have the defendants ever given up their notes, or in any manner discharged the original debtors. *Wildes* v. *Fessenden*, 4 Met., 12.

3. There can be no recovery under the common count for money had and received. It is not found that the defendants have received enough to pay off the debts which it is alleged that they agreed to pay, and there is no provision for a priority of payment among the creditors. If the plaintiffs have any remedy it is only in chancery, where all the parties interested in the fund can be brought in and the share of each ascertained. *Fitch* v. *Chandler*, 4 Cush., 254 ; *Frost* v. *Gage*, 1 Allen, 262.

*L. E. Munson*, with whom was *Sheldon*, contra.

1. The promise being founded on a new and distinct consideration, viz :—the property delivered by Faulkner and

Wright to the defendants, is not within the statute of frauds. 1 Swift Dig., 253, 256; *Leonard* v. *Vredenbergh*, 8 Johns., 31; *Meech* v. *Smith*, 7 Wend., 318; *Farley* v. *Cleveland*, 4 Cowen, 432; *Hilton* v. *Dinsmore*, 21 Maine, 410; *Wait* v. *Waits' Exr.*, 28 Verm., 350; *Tomlinson* v. *Gill*, Ambler, 330; *Dearborn* v. *Parks*, 5 Greenl., 81; *Gold* v. *Phillips*, 10 Johns., 412; *Chase* v. *Day*, 17 id., 115; *Olmstead* v. *Greenly*, 13 id., 12; *Johnson* v. *Gilbert*, 4 Hill, 178; *Nelson* v. *Boynton*, 3 Met., 396; *Pike* v. *Brown*, 7 Cush., 133; *Alger* v. *Scoville*, 1 Gray, 381; *Lampson* v. *Hobart's Estate*, 28 Verm., 700; *Cross* v. *Richardson*, 30 id., 641; *Kutzmeyer* v. *Ennis*, 3 Dutch., 371; *Brown* v. *Strait*, 19 Ill., 88; Parsons Merc. Law, 73; 1 Parsons on Cont., 498; 2 id., 305; Roberts on Frauds, 232; 1 Smith's Lead. Cas., 329. If the agreement is within the statute, yet the performance on the part of Faulkner and Wright, by the delivery of the property, takes it out of the statute. *Crocker* v. *Higgins*, 7 Conn., 348; *Eaton* v. *Whitaker*, 18 id., 222; *King* v. *Woodruff*, 23 id., 56; *Goodwin* v. *Gilbert*, 9 Mass., 510; *Marsh* v. *Hyde*, 3 Gray, 333; *Linscott* v. *McIntyre*, 15 Maine, 201; *Pugh* v. *Good*, 3 Watts & Serg., 56; *Miller* v. *Hower*, 2 Rawle, 53; *Waggoner* v. *Speck*, 3 Ohio, 292; *Moore* v. *Beasely*, id., 294; *Thompson* v. *Gordon*, 3 Strobh., 196; 1 Story on Cont. § 376 x.

2. The plaintiffs can maintain a suit on the promise in their own names. 1 Swift. Dig., 603; *Crocker* v. *Higgins*, 7 Conn., 347; *Sleene* v. *Aylesworth*, 18 id., 244; *Arnold* v. *Lyman*, 17 Mass., 404; *Cabot* v. *Haskins*, 3 Pick., 91; *Schemerhorn* v. *Vanderheyden*, 1 Johns., 138; *Barker* v. *Bucklin*, 2 Denio, 45; *Hinkley* v. *Fowler*, 15 Maine, 285; *Todd* v. *Tobey*, 29 id., 224. It was not necessary that the plaintiffs should have formally accepted the promise or assented to the arrangement. The bringing suit is a sufficient acceptance. *Arnold* v. *Lyman*, supra; 1 Cranch, Appendix, 428; *Hall* v. *Marston*, 17 Mass., 579; *Lawrason* v. *Mason*, 3 Cranch, 495; *Lovely* v. *Caldwell*, 4 Ala., 664; *Grover* v. *Simms*, 5 Blackf., 498; *Treat* v. *Stanton*, 14 Conn., 445; 2 Am. Lead. Cases, 123.

3. There can be a recovery on the count for money had

and received.   More than the amount of the plaintiffs' claim
has been collected by the defendants upon the accounts put
into their hands by Faulkner & Wright.   This money they
received for the express purpose of paying the plaintiffs and
other creditors.   The money was therefore received for the
plaintiffs' use, so far as was necessary to pay their claim.   It
is not a sufficient reply to say that they have other debts to
pay, for the whole amount of the claims which they received
for collection much exceeds the whole amount of the debts to
be paid.   If the defendants wish to protect themselves it is for
them to go into chancery, and, so long as they do not, they can
not, with more than sufficient money in their hands to pay
the plaintiffs, refuse to pay the amount of their claim.

DUTTON, J.   Faulkner & Wright, publishers of a newspaper,
sold out to Lawton & Wright, Wright being the same person
in both firms, and transferred and delivered to them their
assets, including the debts due to the firm.   As a part of the
consideration of the sale, it was claimed that Lawton &
Wright agreed to pay the debts of Faulkner & Wright, the
plaintiffs being the principal creditors.   In this suit the plain-
tiffs are attempting to avail themselves of this agreement, to
collect their claim against Faulkner & Wright.   On the trial,
they offered parol evidence of the agreement referred to, which
was objected to by the defendant Lawton, on the ground, first,
that the agreement was void by the statute of frauds, and
secondly, that the present plaintiffs could not sue on the prom-
ise to pay the debts, as the promise was not made to them, and
the consideration did not move from them.   The court ad-
mitted the evidence.   We think both objections to the evi-
dence were good.

1. The agreement was void, so far at least as the plaintiffs
are concerned, by the statute of frauds.   It would seem that
the mere statement of the case would be enough to show that
it is within both the letter and spirit of the statute.   The
statute in terms requires written evidence of any agreement,
whereby to charge the defendant upon any special promise to
answer for the debt, default or miscarriage of another.   Many

of the numerous cases on this subject appear to treat this clause as if it read " a special promise *to pay*," instead of, " to *answer for* the debt of another." The term " answer for," clearly implies an attempt to hold another as surety. The object of the statute is expressed to be, " for the prevention of many fraudulent practices, which are commonly endeavored to be upheld by perjury and subornation of perjury." The danger is, that creditors will endeavor by false parol testimony to save debts which they will otherwise lose by the failure of the original debtor to pay. Why are the present plaintiffs suing Lawton & Wright instead of Faulkner & Wright? In a suit against the latter no objection could be raised to a recovery. We can conceive of no reason except that they are endeavoring to make Lawton & Wright answerable for a debt which can not be recovered from Faulkner & Wright. It is therefore precisely the case which the legislature had in view. We are far from supposing that these creditors would resort to the fraudulent practices spoken of in the statute. But we could not in another case refuse to dishonest creditors a privilege which we have once granted to those who are honest.

It can not be denied however that in many of the numerous cases to be found in the very full and elaborate brief of the plaintiffs' counsel, doctrines are sanctioned which would permit a recovery in this case. In some of them the court seem to have been influenced very much by the fear, that if the plaintiff was not allowed to recover the defendant would use the statute as an instrument of fraud. They do not seem to have been conscious of their inconsistency, in drawing inferences in a case as proved, when the only question in the case is, whether the law will permit it to be proved in the way attempted. The statute is based upon the conviction of the legislature that it is not safe to allow a contract to be proved in this way. What propriety then can there be in drawing inferences of fraud from facts which are not proved? But the danger of fraud has been overrated. It does not follow at all that a defendant who denies the validity of an agreement on this ground, can retain the consideration. Frauds are not

in fact perpetrated by taking advantage of this statute, to near the same extent to which they are by objections to evidence of a parol contract made in connection with a written contract but not included in it. Yet this has never been considered a sufficient reason for not applying the rule strictly.

Courts have also frequently been misled by not adverting to the distinction between an attempt to hold a person as surety for another, and merely compelling him to pay a sum of money, which may happen to be the debt of another. If *A* sells a house to *B* for one hundred dollars, it is clearly immaterial to *B* whether he is to pay the money to *A* or to one of *A's* creditors. As a contract between *A* and *B* there is no more danger that the fraud mentioned in the statute will be perpetrated than in any other contract. But the moment you allow the creditor of *A* to have an interest in this contract, and to have the right, either expressly or by implication, to sue upon it, as the plaintiffs claim to have in this case, the agreement is brought directly within both the letter and spirit of the statute. Some of the cases seem to turn upon the question whether the defendent has actually received a full consideration or not. But it is obvious that the statute has no reference to the consideration. It implies that there is a sufficient consideration, otherwise the statute would be unnecessary, as the agreement would be void of itself. Some of the recoveries seem to have been allowed on the ground that it appeared that some new and distinct consideration passed from the plaintiff to the defendant. Here again it is plain that unless there was a new consideration, to which the defendant is in some way privy, the agreement would be void without the statute. These cases have grown out of, but in many instances are an extension of, the doctrine contained in *Williams* v. *Leper*, 3 Burr., 1886, and which has been very properly applied in many subsequent cases, that where a creditor has in his hands or subject to his control, property of his debtor which he has a right to apply to the payment of his debt, he may transfer his right in that property to a stranger and take his parol promise to pay the debt. In such cases there is, in the language of Judge Swift, (Swift's Dig., 255,) " a purchase

of the property at a price equivalent to the debt for which it was holden."

We shall not attempt to reconcile the multitude of apparently conflicting decisions, nor to specify which of them meet our approbation. We think however there is a tendency in recent cases to adopt the true rule and to restore the statute to its original purpose. In the case of *Nelson* v. *Boynton,* 3 Met., 396, the supreme court of Massachusetts held, that even where the plaintiff, at the request of the defendant, relinquished an attachment of his debtor's goods, on the strength of a parol promise of the defendant to pay a part of the debt, he could not recover. Here was a new meritorious consideration proceeding from the plaintiff. But it will be seen that it does not come under the class of cases in which a parol promise has been sustained, as it did not amount to a sale of the property held as security, to the defendant.

The case of *Curtis* v. *Brown,* 5 Cush., 488, bears a strong analogy to this case, and fully sustains us in rejecting this evidence. There a builder gave up a building contract and transferred the materials which he had procured to the owner. One of the employees brought a suit against the owner, and offered parol evidence to prove that he had agreed to pay the debts which the builder had contracted. But the court rejected the evidence as being contrary to the statute of frauds. See also *State Bank* v. *Metler,* 2 Bosw. 392, and *Doolittle* v. *Naylor,* id., 206.

2. The other objection is equally fatal to a recovery on this evidence. The promise offered in evidence was not to the plaintiffs, nor intended for their benefit. It was a mere arrangement for their own purposes between Lawton & Wright and Faulkner & Wright. The consideration did not move from the plaintiffs. To sustain this suit we should be obliged to directly overrule the case of *Treat* v. *Stanton,* 14 Conn., 445. In that case the defendant promised in writing, to an executor, to pay to the children, whose money was in the executor's hands, and who had delivered it to the defendant, when they came of age, the money so received by him. Yet this

court on full consideration decided that one of the children could not maintain an action on this promise.

So in *Price* v. *Easton*, 4 Barn. & Ad., 443, the court of King's Bench held that the creditor of an employee of the defendant could not maintain an action against the defendant on a promise by him to the employee to pay the plaintiff's claim, although he had retained the wages of the employee in his hands for the purpose. Taunton, J., says, " It is consistent with all the matter alleged in the declaration, that the plaintiff may have been entirely ignorant of the arrangement between Price (the employee) and the defendant." So in this case it does not appear from the facts found by the court that the plaintiffs at the time knew any thing of the arrangement between Faulkner & Wright and Lawton & Wright. On both these grounds we are clear that no recovery can be had upon the special contract set up in the plaintiffs' declaration.

But they insist that they can recover on the common count. It appears from the finding that the defendants had previous to the commencement of this suit collected on the claims assigned to them about one thousand dollars, and that the debts due from Faulkner & Wright were about one thousand three hundred dollars. There was evidence to show that the net avails of these collections should be applied by the defendants for the payment of the creditors of Faulkner & Wright, but there was no express agreement applicable particularly to the money so collected. It was not denied by the defendants' counsel that the plaintiffs might have an equitable claim to their proportion of this money, but they denied that it could be recovered in this form of action. Although we should have been better pleased to have come to a different result, we think this objection must prevail. The amount of money collected by the defendants has never been ascertained by any reckoning between Faulkner & Wright and Lawton & Wright, nor between creditors of the former and Lawton & Wright. The deductions which ought to be made from the gross amount for the expense and trouble of collecting have never been agreed upon. If it is admitted that this fund belongs to the creditors, they have all a common interest in the adjustment of

these points. If each of the creditors is to bring a separate suit for his share of the money, these questions must be determined in each case, as what is decided in one will not be binding in another. This would be extremely vexatious to the defendants, and of no benefit to the creditors. But what is particularly important, the plaintiff in one of these suits would probably recover his share of one sum and the plaintiff in another suit his proportion of an entirely different sum, as it could not be expected that either courts or juries would agree exactly in results, especially as there might be evidence in one case which was not used in the others. The consequence would be that the defendants would be obliged to pay, in the whole, a sum greater or less than they had in their hands, and one creditor might realize seventy-five cents on the dollar of his claim and another not over fifty. It is manifestly, therefore, a case which ought to be brought before a court of equity, in which all the parties in interest would have an opportunity of being heard, where there would be but one adjustment of the accounts, where all the creditors would receive the same percentage, and the decree be binding upon all.

The case of *Beach* v. *Hotchkiss*, 2 Conn., 425, is decisive upon this question. In that case one of three partners had received a sum of money arising out of a sale by him of partnership property, the net avails of which belonged equally to himself and each of the others. He had actually paid one of them what he admitted was his share. The other then brought an action of indebitatus assumpsit to recover his share. But the court held that the action would not lie, as there had been no adjustment of the amount between the three. Nothing had been done to prevent the defendant from claiming that he had paid the other partner too much, or to prevent the other partner from claiming that he had not received enough. The court therefore held that the only remedy was in chancery. The fact that there was a partnership in that case made no difference, as the difficulty arose from the joint interest of more than two.

It has always been understood that the remedy of creditors

against a trustee for their benefit, where no bond has been given by the trustee, is in chancery. The judgment in this case must be reversed.

In this opinion the other judges concurred.