WILBUR A. MARSHALL ET AL. *vs.* GEORGE B. CLARK.

Third Judicial District, Bridgeport, April Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

The ordinary measure of damages for a failure by a vendor of goods to deliver them as agreed is the difference, if any, between the contract price and their higher market price at the time and place agreed upon for delivery.

If the merchandise were bought at wholesale, the wholesale market price would control; and if there were no such price at the place of delivery, the value of the merchandise would be determined by its wholesale price at the nearest convenient wholesale market plus the cost of its transportation to the place of delivery.

Knowledge by a wholesale dealer in standard articles that his customer buys in order to sell at retail, does not make him responsible for profits which the retailer might have made had he received the goods and been able so to sell them.

Such wholesale dealer is not liable in damages for the retailer's loss of customers, nor for a shrinkage in the value of similar goods bought from others to replace those ordered from, and sold but not delivered by, the wholesaler.

Delay in acting upon a motion to set aside a verdict as against the evidence is immaterial, if the undisputed facts show that the action taken by the trial court was well founded.

Argued April 12th—decided May 12th, 1905.

ACTION to recover a balance due for coal sold, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Hubbard, J.;* verdict for the defendant to recover $439 upon his counterclaim, which the trial court, upon motion of the plaintiffs, set aside as against the evidence, and appeal by the defendant. *No error.*

*Charles S. Hamilton,* with whom was *James F. Torrance,* for the appellant (defendant).

*Grant C. Fox, Jr.,* of New York, for the appellees (plaintiffs).

BALDWIN, J. The plaintiffs, wholesale coal dealers in New York City, sued the defendant, a coal dealer in Derby, for a balance of $500 due for coal sold to him. His answer, admitting the indebtedness, set up by way of counterclaim that they owed him $1,000 as damages for breach of a contract made with him in New York City on February 6th, 1903, to sell and deliver to him at Derby a cargo of coal then laden on the barge President, in New York harbor. The damages which he alleged that he had suffered were the loss of profits that he would have made by retailing the coal to customers in Derby who needed and would have bought it, as the plaintiffs well knew; the loss of the trade of a large number of customers; the loss of freight paid, at a higher rate than that agreed on with the plaintiffs, on coal which he was obliged to purchase from others; and a depreciation in value of such coal before he could sell it.

It was admitted by the pleadings that the cargo in question, consisting of 499 tons, was so sold to him at $5.25 a ton, free on board, at New York, and that the defendant was to pay 90 cents a ton for its transportation on the barge to Derby. The plaintiffs denied that they were to deliver it in Derby, claiming that it was to be taken there by the defendant, he arranging for the transportation with the master of the barge, and paying the freight to him; and as to this the evidence was sufficient to justify the jury in finding the issue for the defendant.

Marshall *v*. Clark.

They could therefore award him such damages as naturally followed from the plaintiffs' failure to deliver the coal at Derby as agreed, that is, within a reasonable time after February 6th. Their ordinary measure would be the excess, if any, of the market price of such coal at Derby, at the date when the cargo should have been delivered, and the price agreed on between the parties. *Jordan, Marsh & Co.* v. *Patterson,* 67 Conn. 473, 480. This market price would be the wholesale price. It was not claimed that there was any wholesale market price for coal at Derby. The value of coal at Derby would therefore be determined by its wholesale market price at the time at the nearest convenient wholesale market, and the cost of transportation from there to Derby. *Grand Tower Co.* v. *Phillips,* 23 Wall. (U. S.) 471, 480. A near and convenient wholesale market was to be found in New York City.

The evidence showed beyond reasonable question that coal of the kind in question, which had previously been scarce there, on account of the great strike in Pennsylvania, became plenty early in February, and that the wholesale market price did not rise after February 6th during the remainder of that month and the month following.

It showed also that the Housatonic River was open and free from ice, up to Derby, until February 20th; that Bridgeport harbor remained open at all times after February 6th; and that the freight on coal by the car-load from Bridgeport to Derby in February was 80 cents a ton.

The defendant could therefore have bought other and equally good coal, at and for a considerable time after the breach of contract by the plaintiffs, at the same price, which he agreed to pay to them, except for such increase as there might be in the freight charges between New York and Derby. It appeared that he bought a cargo from them on February 13th, for transporting which to Derby by way of the Housatonic River he paid $1 a ton. This did not reach Derby until March but, had it been shipped to Bridgeport and thence to Derby by rail, the freight would not have exceeded $1.80 a ton. If he could properly have taken the

latter course, his damages from the breach of contract would be 90 cents a ton, or less than $450.    The verdict in effect gave him $939.20.

That the plaintiffs knew, when they sold him the cargo, that he bought for the purpose of selling it at retail did not entail any obligation to answer for profits which he might have made, had he been able so to sell it.    The coal could easily have been replaced by purchases from others, with the same opportunity for profit on resales.

No proof was offered of the alleged loss of customers, nor of a shrinkage in value of coal bought from others to replace that sold by the plaintiffs; and had there been, it would have been inadmissible.    Such consequences were not of a kind to be reasonably anticipated from the breach of the plaintiffs' contract.

The motion to set the verdict aside was held under advisement from December 7th to February 2d.    It is urged that in view of such a delay less weight should be given to the opinion of the trial judge.    The undisputed facts, however, are sufficient to show that it was well founded.

It is further contended that if the verdict was excessive, it should have been set aside only in case the plaintiff declined to remit a portion of the damages.    There is nothing in the evidence that could justify the jury in finding damages in excess of the $500 which was conceded to be due to the plaintiffs.    The verdict should have been in their favor.

There is no error.

In this opinion the other judges concurred.