ANTONIO BARTOLOTTA *vs*. CARMELO CALVO.

Third Judicial District, Bridgeport, October Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 28th—decided November 29th, 1930.

*Robert J. Woodruff* and *Louis Shafer,* with whom, on the brief, was *John G. Confrey,* for the appellant (plaintiff).

*Edward J. Finn,* for the appellee (defendant).

MALTBIE, J. The plaintiff, who resides in Ansonia, at the solicitation of the defendant entered into a written contract with the Continental Grape Dispatch, Incorporated, of California, for the purchase of a carload of grapes. The contract was signed on behalf of the corporation by the defendant as its agent. It specified that the grapes should be of two kinds, six tons of one, and eight tons of the other. The plaintiff sent the corporation a bank draft in payment for the grapes. When the car arrived, it was found to contain only grapes of the former kind. The complaint bases the plaintiff's cause of action upon an oral promise by the defendant that, if the plaintiff would execute the contract, the defendant would be personally responsible for the full performance of the contract and that the plaintiff need not concern himself with the corporation in California but could consider himself as dealing only with the defendant. At the trial the plaintiff claimed to have proved that the defendant made the following representations: "That he, the defendant, was a responsible man, that he lived in Waterbury at an address which he gave to the plaintiff on a piece of paper, that he owned real estate in Waterbury, and that if the plaintiff executed an order for a carload of grapes, that he, the defendant, would be responsible for any damage; that when the car arrived he would personally come and open the car; that he would be responsible for any damage to the grapes whether they arrived in good condition or bad condition; that he would watch close to ship

plaintiff the grade of grapes he bought and would be responsible for what plaintiff received; that he, the defendant, would be responsible for everything, and that whatever damages plaintiff sustained, defendant would be responsible for; that he, the defendant, was going to have shipped to the plaintiff eight tons of Zinfandel grapes and six tons of Muscat grapes; that they were to arrive in good condition, otherwise he, the defendant, would be responsible; that if the plaintiff bought a carload of grapes the defendant would assume the entire responsibility for it, and the plaintiff did not have to recognize the company in California but need only recognize the defendant." The defendant denied making any representations of this nature.

One of the principal issues litigated at the trial was whether, if the jury found that the defendant made any such representations as claimed, the promise of the defendant was one to answer for the debt, default or miscarriage of another within the statute of frauds, so that, being oral, it was unenforceable. In this situation it was the duty of the trial court in its charge to leave to the jury the determination of what representations, if any, were made by the defendant and to instruct them as to the principles of law which would determine the rights of the parties upon the basis of their findings upon this issue of fact. The trial court in its charge went at considerable length into an explanation as to the distinction between promises which were unenforceable under the statute and promises which were so far independent undertakings as not to be within its condemnation. It emphasized as the distinguishing characteristics of the latter a distinct benefit accruing to the promisor, pointed out that there was no evidence of any commission which would be earned by the defendant or of any benefit which would accrue to him from securing the contract for the cor-

poration except such inference as might arise from his signing the contract as agent of the corporation, and finally, upon this phase of the case, charged that, if the jury found that the plaintiff had proven the promises substantially as alleged the question was "has the plaintiff established by a fair preponderance of the evidence, that in making that promise the defendant did so induced by some benefit accruing to himself? If so, then that would be in law a contract of indemnity, which need not be in writing and would be enforceable. If there was no such benefit, if there was no consideration for it between himself and this plaintiff, then in law it was no more than a contract of guaranty, and must be in writing in order to be enforceable."

This was entirely too narrow a view to take of the situation. Fundamentally the distinction between a contract which falls within the condemnation of the statute of frauds and one which does not is that the former is a collateral undertaking to answer in case of a default on the part of the obligor in the contract, upon whom still rests the primary liability to perform, whereas in the latter the obligation assumed is a primary one that the contract shall be performed. If, for example, in the instant case, the intention of the parties was that the defendant should assume the direct obligation of seeing that the plaintiff obtained the grapes desired through the instrumentality of the agreement of the California corporation, the promise of the defendant would not be one to answer for any default on the part of the defendant company, but would be his own primary obligation, and the fact that the agreement of sale made with the corporation would give the plaintiff a right of recovery against it would not alter the defendant's obligation. Thus in *Reed* v. *Holcomb*, 31 Conn. 360, the plaintiff was allowed to

recover upon an oral promise of the defendant that he would see that a promissory note, which he had caused to be made to the plaintiff without his knowledge and induced him to indorse so that he, the defendant, might discount it, was paid and would indemnify the plaintiff for anything he had to pay, where it appeared that the plaintiff, although he supposed that if he had to pay it the makers would be liable to him, regarded their responsibility as of little value. The court said: "The section of the statute which is supposed to be applicable to the case was not intended to protect parties from any other contracts than those of surety-ship or guaranty for the payment of some debt or the performance of some duty by a third person. But if no credit is given to such third person, and the con-sideration of the promise does not move from him, and he is not to be benefited by it, the statute did not intend to make void the promise because such third person might also be primarily liable for the same debt or duty."

It is true that in the same opinion the court went on to say: "If the promise is on a sufficient considera-tion moving between the immediate parties to it, and from which the promisor is to derive a benefit, in view of which the promise is made, it then becomes a new and independent contract existing entirely be-tween the immediate parties to it. The benefit which the original debtor may derive from it is incidental, and in no respect the object of the parties, and ought not therefore to affect the validity of their contract." Similar language is used in other decisions we have made. See *McCormick* v. *Boylan,* 83 Conn. 686, 687, 78 Atl. 335; *Wolthausen* v. *Trimpert,* 93 Conn. 260, 265, 105 Atl. 687. A consideration of our decisions as a whole, however, makes it clear, that the consideration for the promise, or even the benefit to the promisor,

is not the vital element which determines the nature of the undertaking. *Dillaby* v. *Wilcox*, 60 Conn. 71, 79, 22 Atl. 491. Particularly is this so where, as here, the promise is contemporaneous with the making of the contract default in which would be the basis of the promisor's liability. If there is a distinct benefit moving to the promisor by reason of his promise, that would indeed be relevant and generally a major consideration in tending to show an intent to establish his undertaking as the assumption of a primary liability, but it is not conclusive. Thus in *Warner* v. *Willoughby*, 60 Conn. 468, 22 Atl. 1014, where a subcontractor was induced to forego the filing of a lien upon the promise of the owner of the building under construction to pay the money to become due to him from the contractor the promise was held to be unenforceable under the statute. See also *Clapp* v. *Lawton*, 31 Conn. 95, 103. If, however, there is a benefit to the promisor which he did not before, and would not otherwise, enjoy and in addition the act is done upon his request and credit there ordinarily arises an original undertaking not within the statute. *Smith* v. *Delaney*, 64 Conn. 264, 275, 29 Atl. 496. The ultimate question must of necessity be the nature of the promise, not the circumstances which led to its being made. "The interest which a promisor has in the performance of a contract by another, or the benefit which he thinks he may derive thereby, cannot determine his liability. That liability arises from the character of the promise, and the interest in the principal contract, or the benefit to be gained by its performance, become matters of consideration, only as they may serve to determine that character." Field, J., in *Clay* v. *Walton*, 9 Cal. 328, 335.

Though an agreement be oral, when its terms are once settled, its meaning and effect become a question

of law. *Guiel* v. *Barnes,* 100 Conn. 737, 743, 125 Atl. 91. Reading the representations which the plaintiff claimed the defendant made as a whole, one cannot escape the conclusion that, if made, they went beyond a collateral agreement by the defendant to be liable in the event of the default by the corporation and amounted to the assumption of a primary obligation to see that the agreement of sale was performed. Had the representations gone no further than mere promises that the defendant would be responsible for any damage that might result, it would not be possible to construe them as falling without the condemnation of the statute. But, as claimed, they went further and contained representations that the defendant "would watch close to ship plaintiff the grade of grapes he bought and would be responsible for what plaintiff received," that he "would be responsible for everything," that "he . . . was going to have shipped to the plaintiff" the grapes ordered; and that "if the plaintiff bought a carload of grapes the defendant would assume the entire responsibility for it, and the plaintiff did not have to recognize the company in California but need only recognize the defendant." Indeed, in this last respect the exact statement of the defendant as testified by the plaintiff, appearing in the charge, is even stronger than that contained in the claims of proof. That the defendant had some definite interest in securing the contract is clear from the urgency evidenced in his representations, though no benefit having a monetary value was shown. The trial court should have charged the jury that if they found the representations were made substantially as claimed by the plaintiff, the agreement of the defendant constituted the assumption of a primary obligation upon his part, enforceable though made orally, but that if the plaintiff failed to prove any such representations were made

or that those which were made went no further than promises by the defendant to be responsible for any damages arising from the failure of the corporation to perform its contract, then they would be unenforceable by reason of the statute.

As the error of the trial court we have been discussing necessitates a new trial, certain other principles dealt with in the charge should be briefly considered as far as they are likely to be involved in a further hearing. The court dealt at some length with the scope of the responsibility assumed by the defendant, if the jury found his promises to be such as were enforceable. It follows from what we have said that if the defendant is liable at all it can only be because he assumed a primary obligation that the contract should be performed and, of necessity, the scope of his liability is measured only by the requirements of such a performance.

When the plaintiff found that more of the kind of grapes delivered were sent than were called for under the contract, he had the option either to reject all of them, to accept so many as the contract specified and reject the rest or to accept all of them, paying for them at the contract rate. General Statutes, § 4664. He chose the last alternative. By so doing he in effect amplified his contract to cover them, and on account of his acceptance of them alone no liability would follow from his inability thereafter to use or dispose of them. The acceptance by the plaintiff of the grapes in the car did not preclude him from seeking damages on account of the breach by the corporation of its agreement to deliver grapes of the other kind, if within a reasonable time after he knew of it he gave notice of the breach to the defendant, who, if liable at all, became as to him in effect the seller of the goods. General Statutes, § 4669. It follows necessarily that such

acceptance alone would furnish no basis for finding a waiver of the breach. *Williams* v. *Perrotta,* 95 Conn. 529, 111 Atl. 843. The trial court was in error in charging the jury that from that acceptance, with knowledge of the fact that only one kind of grapes was included in the shipment, they might find an intent on the part of the plaintiff to accept them in full discharge of the contract.

The measure of recovery for the failure of the corporation to ship the grapes not sent, in the absence of special circumstances showing proximate damages to a greater amount, would be the difference between the sum they would have cost the plaintiff under the terms of the contract and the sum it would have cost him to buy and secure delivery of similar grapes in the nearest convenient wholesale market. General Statutes, § 4687; *Joseloff Co.* v. *Spirt,* 97 Conn. 447, 450, 117 Atl. 523; *Marshall* v. *Clark,* 78 Conn. 9, 60 Atl. 741. As by procuring grapes in this way, the plaintiff would have been in as good a situation, so far as appears, to fill any agreements he had made for the resale of the grapes at retail, he would not have been entitled to recover also for any loss resulting from an inability to carry out those agreements. *Marshall* v. *Clark, supra,* 12; 2 Sutherland on Damages (4th Ed.) § 662. In determining the cost of the grapes not sent to the plaintiff under the contract, as they were sold f. o. b. California, the cost of transportation to Ansonia would have to be determined. The trial court charged that upon the evidence it seemed to it that any attempt to arrive at that cost would be purely speculative. If that was the conclusion of the trial court it should have charged the jury that upon the evidence there was no ground upon which they could legally determine that cost. The only evidence of the transportation cost was the freight bill for the grapes which were shipped,

which showed the rate charged per pound. The difficulty was that the grapes not shipped would have come in open lugs, as did those received, and, as the weight of grapes in each lug varied greatly and it did not appear what the weight of a lug was or how many lugs would be required, the total weight of a shipment of these grapes could not be shown. It is incumbent upon a plaintiff in a contract action to prove his damages with all the certainty which is reasonably possible, but where exactness is not possible he is not therefore to be precluded from a recovery, and the best approximation to certainty is all that is required. *Bridgeport* v. *Aetna Indemnity Co.*, 91 Conn. 197, 205, 99 Atl. 566. It does not appear that the proof of the plaintiff came up to the requirements of this rule.

The trial court, no doubt by inadvertence, told the jury that it was the duty of the plaintiff to have gone into the market and procured grapes to take the place of those not shipped. While the price for which he might have purchased grapes in the market was a necessary element in measuring his damages, of course he was not bound actually to purchase them, unless he chose to do so.

The plaintiff complains of two rulings on evidence by the trial court admitting portions of the files in two other actions brought by the plaintiff against the defendant and withdrawn by him before judgment. The court admitted them for the purpose of showing inconsistent positions taken by the plaintiff in the other actions and as bearing upon testimony of the defendant that the plaintiff threatened him with ruin unless he paid to him a small sum which the plaintiff had overpaid to the California corporation. Statements inconsistent with the claim of a party in the action on trial may be admissible as admissions even though they are contained in pleadings not involved in

the immediate trial. *Loomis* v. *Norman Printers Supply Co.,* 81 Conn. 343, 71 Atl. 358. An examination of the pleadings admitted in evidence does not show any material inconsistency with the claims made by the plaintiff in the present trial. We cannot say, however, that the trial court was in error in admitting the pleadings in the other actions upon the second ground stated. They might have a bearing upon the good faith of the plaintiff in pressing his present claim. It was in error, however, when, having admitted them for that purpose, it refused to permit the plaintiff to testify as to the reasons why the actions were withdrawn.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.