[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The two above entitled cases have previously been consolidated for trial. The plaintiff in each action pleads in the alternative and claims judgment and damages in the amount of $29,874.45, together with interest from February 20, 1987. The claims are for labor and materials furnished by the plaintiffs to the defendant pursuant to a contractual agreement or that the reasonable value of said labor and materials furnished was $29,874.45, or that the defendant, Kapetan, Inc. as principal and the defendant Travelers Indemnity Company as surety are jointly and severally liable under two bonds which were substituted in lieu of a mechanic's lien previously filed by each of the plaintiffs.
The defendant, Kapetan Inc. filed answers to each complaint denying the material allegations contained therein. In the Piccolo, d/b/a P C Fence Company claim the defendant filed special defenses alleging the failure of P C to perform the work in accordance with said contract, the mutual termination of the contract, the failure of P C to timely file a mechanic's lien, and the waiver by P C of its right to file a mechanic's lien. The defendant Kapetan, Inc. filed special defenses in the Ayala Construction Company claim alleging that the plaintiff did not provide services and materials in accordance with its agreement, that Ayala failed to execute a written contract as required by the agreement and that Ayala waived its right to file a mechanic's lien.
The defendant, Kapetan, Inc., filed a counterclaim against both P C and Ayala alleging damages because of the failure of each plaintiff to complete the work as agreed. Kapetan alleged it expended money in excess of the contract to complete said CT Page 7372 work and further incurred damages by reason of substituting a bond in lieu of the mechanic's liens as filed by each of the two plaintiffs.
Both complaints arise from the following factual situation. The plaintiff, John R. Piccolo d/b/a P C Fence Company, entered into a written agreement dated March 14, 1986 with Kapetan, Inc. to provide materials and labor as required in the installation of fencing and guard rails as delineated in Exhibit A of said contract. Kapetan, Inc. was installing same as the general contractor for Westfield Properties, owner of the Trumbull Shopping Park. The contract price was $56,500.00 with unit prices set forth for additional fencing, guard rails and gates. The parties agreed to several change orders during the course of the contract. Plaintiff commenced work in October 1986 and continued until late December 1986 or early January 1987 when Ronald Nobili, business manager of the Laborer's Union complained to Kapetan that P C Fence Company was performing work on this project with non-union labor. Kapetan had entered a previous agreement with the labor union which required that all of its sub-contractors in fact use union labor. On January 8, 1987, Peter Kapetan, John Piccolo and Robert Testo, Jr., general manager of Ayala Construction Company, met and informally agreed that the work would be completed by Ayala Construction Company employing union labor, that Ayala would enter a new contract with Kapetan in accordance with which Kapetan would pay Ayala an additional nine dollars per hour for union labor which was the then current wage differential between union and non-union labor, that Ayala would complete the work and receive the balance due P C on their contract. It was further contemplated that Ayala would then reimburse P C for all materials and labor supplied to date. Kapetan, Inc. sent Ayala a contract which was never executed by and between the parties.
Ayala Construction installed fencing and guard rail on the subject premises from about January 12, 1987 through February 15, 1987 using union labor. At this time Ronald Nobili, business manager of the Laborer's Union, again appeared on the job site and claimed that Ayala was merely the alter-ego for P C Fence Company which was a non-union employer. Ayala continued work from February 16, 1987 through February 22, 1987 using union labor provided by Kapetan. Inc. to install P C Fence Company's material under P C supervision. However, Ronald Nobili's actions and protest did not go unheeded and Ayala's attorney soon advised that Ayala could not perform further work on this job.
On or about February 25, 1987, Keith Langston representing Ayala met with Vito LaVacca. Project Manager for Kapetan, Inc., CT Page 7373 and discussed how much work had been done to date and how much money Kapetan owed to Ayala and or P C Fence Company. At or shortly after this February 25, 1987 meeting, Mr. LaVacca prepared defendant's exhibits M and N. On March 25, 1987 the defendant forwarded a check to the plaintiff in the amount of $14,615.61. After receipt of this check the plaintiffs were still claiming that there was a balance owed in the amount of $29,874.69 and were demanding payment of same in accordance with a Mailgram sent to defendant on April 16, 1987. (P's Ex. 9).
Paragraph II of the March 14, 1986 contract between P C and Kapetan provided that work and materials accepted will be paid for at the rate of 90% of value on the 20th of the next month, 10% balance to be paid upon completion. (P's Ex. 1)
Defendant's Exhibit N prepared by Vito LaVacca indicates that plaintiffs were and had been entitled to at least 90% of another $14,615.60 which was due and owed at this time. Plaintiffs claim they were entitled to 90% of at least an additional $29,874.69 at this juncture.
Thereafter, correspondence was exchanged between the parties with plaintiffs demanding immediate payment and defendant demanding plaintiffs resume and complete the job using union employees. On April 14, 1987 Kapetan ordered plaintiffs to commence completion of the work using union labor or Kapetan would complete the work with another contractor. Plaintiffs requested defendant provide the union labor in which case P C would provide materials and supervision and further demanded payment for the work completed to date, all as set forth in plaintiff's Mailgram of April 16, 1987.
Defendant notified plaintiff by letter of April 28, 1987 that "we have proceeded with the work with another contractor and referred to paragraph X of the March 14, 1986 agreement." However, defendant Peter Kapetan admitted as set forth in plaintiff's post trial memorandum that said paragraph X was "applicable to jurisdictional disputes between subcontractors over which craft was entitled to perform work and that the objection of the Laborers Union to a non-union subcontractor was not a jurisdictional dispute," and therefore paragraph X was in no way applicable to this matter.
Defendant hired Westport Fence Company and completed the job with Kapetan labor. On May 18, 1987 each plaintiff filed a mechanic's lien against the defendant Kapetan, Inc. in the amount of $29,874.25. The parties agree that the original contract price was $56,500.00 but unfortunately can agree on little else. They do not agree on the amounts of materials furnished, the number of lineal feet of each item required by the CT Page 7374 contract, the price per lineal foot to be paid for said items, the number of hours of labor performed and whether certain items are "extras" or included in the original contract.
The court has carefully considered all of the evidence presented by the opposing parties, plaintiffs' Exhibits 1 through 14 and defendant's exhibits A through MM. The following witnesses appeared and testified: John Piccolo, plaintiff and owner of P C Fence Company since 1972, Robert J. Testo. Jr., former general estimator for P C and incorporator of Ayala Construction Company, Vito J. LaVacca, project manager for Kapetan Construction, Peter M. Kapetan, President of Kapetan, Inc., Robert J. Russo, Vice President and chief financial officer of Kapetan, Inc. and Ronald B. Nobili, Business Manager of the Labor Local. The court has further observed the witnesses as they testified and has noted their demeanor, expressions, interest in the matter, bias, candor, sincerity and other indices of truthfulness and credibility.
Defendant's brief correctly states that there are two major issues which the court must decide in these cases. The court must first decide the reasons why P C Fence Company and Ayala did not complete the job in accordance with the original contract and secondly the value of the services provided by P 
C Fence Company and Ayala.
The testimony from all of the witnesses indicates that a fundamental problem which prevented P C Fence Company and Ayala from completing this job in accordance with the contract of March 14, 1986 was the intervention of Ronald Nobili, business manager of the labor union. Mr. Nobili appeared on the scene twice and each time the work stopped. The written agreement between P C Fence Company and Kapetan, Inc. does not specify that P C Fence Company must provide union labor. All parties agree that there was no discussion of the union labor requirement prior to the signing of this contract. Mr. Piccolo confirmed that he had never employed union labor and P C had never used union labor on any job. He testified he did not know at the time that Kapetan was a union contractor and Kapetan never told him of this fact. Peter Kapetan confirmed that he had never told P C that they would have to employ union workers on this job. The only party to this contract who knew Kapetan, Inc. had an agreement to use only union labor was the defendant. Peter Kapetan, who freely admitted that he never told plaintiff P C prior to the signing of this contract that P C would have to use union labor. Mr. Kapetan had been president of Kapetan, Inc. for approximately twenty-two years. He also had prior experience in the general contracting business with Dwight Building Company and was the general contractor for Westfield Properties. Kapetan, Inc. had performed on many jobs CT Page 7375 as a general contractor and he knew or should have known that there was at that time a nine dollar per hour wage differential between union and non-union labor. He must have been aware that this was a major item in plaintiff's computation of the price for this job and that P C contracted and agreed to perform at a lower price than if union labor was in fact contemplated. The court finds that it was the defendant, Kapetan, Inc. who was responsible for the problem which arose concerning the issue of union labor on this job.
The two major items encompassed by this $56,500.00 contract are $45,000.00 of chain link fence and $11,500 of guard rail. There are also change orders increasing the contract price. Unfortunately the contract does not specify the number of lineal feet for each of these items but merely refers to three pages of "Exhibit A", Contract documents. Defendant's Ex. M was prepared by Vito LaVacca, Defendant's project manager. The court views same to be of assistance, albeit somewhat self-serving. Exhibit M indicates 7190 feet, more or less, of fencing and 650 feet of guard rail were originally contemplated. This would price fix the fencing at $6.25 per lineal foot and the guard rail at $17.69 per lineal foot. It should be noted that these lineal foot prices do not exactly match up with the conflicting testimony or other exhibits. Defendant's project manager may be as inaccurate with his footage as he appears to be when he states in EX. M that the "fence is worth $41,000.00 and the guard rail $15,500.00," when the contract clearly states the fence is worth $45,000.00 thereby making the guard rail worth $11,500.00 as the full contract price is stated and agreed to be $56,500.00 by all parties.
The court could find that the plaintiffs completed the change orders at 100% with the exception of the guard rail. Using the defendant's own figures, the court could find that the plaintiffs completed almost 5000 feet of fencing or 69.5%. The court further could find the plaintiffs completed 406 feet of additional guard rail out of the 520 feet ordered and 330 feet of the original 650 feet or 736 feet of guard rail out of a total of 1170 feet or 62.9%.
However, if the guard rail was figured at $25 per lineal foot as per the contract which allowed 11,500 for guard rail the number of feet would be 460 with the plaintiff admittedly installing 330 feet or 71.7% on the original contract and 406 feet out of 520 feet or 78% on the additional change order.
Defendant's Exhibit M further indicates the contract price with change orders was at $71,430.00. After receipt of defendant's last check on March 26, 1987, the defendant had paid $28,530.77 including all credits to which it was entitled or CT Page 7376 only 39.9% of the contract price. There can be no question that a progress payment was due and owing to the plaintiffs at this point.
It is apparent from the testimony and all of the evidence, particularly from defendant's Exhibits M and N prepared by Vito LaVacca, defendant's project manager for this job, in late February or early March, 1987, and plaintiffs' Exhibits 1 and 9, that there was a substantial performance of the contract by the plaintiffs at least to the time that defendant refused to make a progress payment which was then due.
"The general rule to be applied in construction cases is that the failure to make progress payments is a breach of contract so substantial as to render the contract nugatory. Guerini Stone Co. v. Carlin Construction Co., 248 U.S. 334, 344,39 S.Ct 102, 63 L.Ed. 275 (1919); United States v. Southern Construction Co., 293 F.2d 493, 498 (6th Cir. 1961) rev'd on other grounds, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); Morici v. Jarvie, 137 Conn. 97, 101, 75 A.2d 47 (1950).
The failure to make installment payments when due goes to the essence of a contract. Morici v. Jarvie, supra. Rescission is the proper remedy for failure to do that which is basic to the contractual obligation of a party to a contract. Gilman v. Pedersen, 182 Conn. 582, 584, 438 A.2d 780 (1981): Collins v. Sears, Roebuck Co., 164 Conn. 369, 382, 321 A.2d 444 (1973). Martin v. Kavanewsky, 157 Conn. 514, 519, 255 A.2d 619 (1969). Rescission is the remedy for an unjustified failure to make progress payments. United States v. Western Casualty Surety Co., 498 F.2d 335, 339 (9th Cir. 1974). A failure to make any payments for work in progress goes to the root of the bargain of the parties and defeats the object of the parties in making the agreement. The remedy of recision does not need to be expressly stated in an agreement. Keyes v. Brown, 155 Conn. 469,475, 232 A.2d 486 (1967)." Silliman Co v. Ippolito Sons, Inc., 1 Conn. App. 72, 75, 76 (1983) cert. denied. 192 Conn. 801.
The unwarranted refusal of the defendant to make a progress payment which was then due coupled with the unexpected necessity of using Union labor justified the plaintiffs in not continuing the work. "It entitled them, upon their election, to recover in quantum meruit for the reasonable value of the labor and materials already furnished by them instead of seeking damages for breach of the express contract. Valente v. Weinberg, 80 Conn. 134, 135, 67 A. 369; Tompkins, Inc. v. Bridgeport, 94 Conn. 659, 682, 110 A. 183: McCleave v. John J. Flanagan, Co., 115 Conn. 36, 40, 160 A. 305 17 C.J.S. 475." See Morici v. Jarvie, 137 Conn. 97, 102. CT Page 7377
The court finds that the defendant was responsible for the breach and the subsequent recission of this contract by initially not informing plaintiff that Union labor was required and by a failure to make a progress payment when due. These findings are fortified by the testimony of all parties at trial who appeared to agree that there had been a recission of this contract.
The defendant, Kapetan, Inc. is correct when it maintains that P C initially waived its right to file a mechanic's lien in connection with this job. Paragraph 12 of the contract clearly states that "the sub-contractor agrees that neither he nor anyone working with or under him shall file or maintain a lien commonly called a mechanic's lien for work done or materials furnished upon the premises." The language used could not be more clear. "We recognize that ordinarily, whether the plaintiff waived his right to a mechanic's lien is a question of fact to be determined by the trier. Where, however, there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." See Lavigne v. Lavigne, 3 Conn. App. 423, 428 (1985) and Pero Building Co. v. Smith, 6 Conn. App. 180, 184 (1986).
The plaintiff P C Fence Co. could not proceed under its mechanic's lien theory if the contract was still viable. However, a breach of contract by the defendant and a recision did in fact take place and the plaintiff P C Fence Co. could proceed with its mechanic's lien rights as the contract was now nugatory. The plaintiff Ayala Construction Co. did not sign a contract and thus did not waive its mechanic's lien rights.
When a court grants the remedy of restitution for breach, the party in breach is required to account for a benefit that has been conferred on him by the injured party. "When an injured party seeks an award of money to protect his restitutionary interest, any award is measured by either (a) the reasonable value to the other party of what he received. . . or (b) the extent to which the other party's property has been increased in value or his other interests advanced." 3 Restatement (Second), Contracts 371 (1981).
However, the court has found that the plaintiffs have proved the existence of an express written contract which was breached by the defendant causing damages to the plaintiffs. Thus it is not necessary to consider further the merits of plaintiffs alternative theories of liability arising from their mechanic's liens, quantum meruit, restitution, or unjust CT Page 7378 enrichment. Suffice it to say that the court finds the measure of damages in this case would be essentially the same under all of said theories and that all of said theories are viable.
Plaintiffs claim eight specific items by way of damages and the court will consider each claim separately. The court has carefully reviewed all of the testimony and exhibits including plaintiff John Piccolo's testimony and defendant's Exhibits M and N which were prepared by its project manager.
(1) a claim in the amount of $480.00 for the installation of forty feet of eight foot fence at the end of Whalburn Street as evidenced by defendant's Exhibit I, Change Order No. 1. and Plaintiffs' Exhibit 2. Defendant's Exhibit M indicates that this item was 100% completed. The court allows this claim in full.
(2) a claim in the amount of $379.36 to reinstall the fence at Whalburn Street after it was removed by the site contractor as evidenced by defendant's Exhibit I and is indicated as 100% completed on Defendant's Exhibit M. The court allows this claim in full.
(3) a claim in the amount of $6,920.10 for 330 feet of guard rail installed in accordance with original contract at $21.00 per lineal foot. This claim is confirmed by defendant's Exhibit M which indicates 330 LF of guard rail completed at a price of $8,215.00 which equates to $24.893 per foot. Plaintiffs' claim may be $1,295.00 less than the amount defendant felt was owed. The court allows this $6,920.10 claim in full.
(4) a claim in the amount of $10,150.00 for 406 feet of additional guard rail at $25.00 per foot. This claim is confirmed by defendant's Change order No. 1, Ex. I and defendant's Ex. M which indicates that 78% of the total 520 LF for $13,000.00 had been installed and that $10,140 was due. The court allows plaintiffs $10,140.00 on this claim.
(5) a claim in the amount of $3,030.75 for 336.75 hours of union labor at the additional $9.00 per hour as agreed to by the parties and reflected by defendant's Exhibit J, Change Order No. 2, which confirms 198 hours at $9.00 per hour or $1,782.00. Defendant's Ex. R, Change order No. 3, reflects a credit to the plaintiffs of $1,851.75 for 205.75 hours at $9.00 reducing the defendant's credit from $4,498.81 to $2,647.06. The court finds that the plaintiffs have not sustained their burden of proof for hours in excess of their original claim for 198 hours and will allow only the 198 hours at $9.00 per hour or $1,782.00 on this claim. CT Page 7379
(6) a claim in the amount of $34,160.00 for fifty six hundred feet of six foot chain link fence at $6.10 per lineal foot. The contract, Plaintiffs' Ex. 1, indicates that all fencing would be done for $45,000. Defendant's Ex. M reflects the total amount of fencing to be 7190 feet, more or less. and that 4550 feet had been installed together with 450 feet of fence posts only. Plaintiff testified that 5600 feet of fencing was installed. Defendant's Ex. M values all of the fencing at $41,000.00 while the contract values same at $45,000.00, or $6.25 per lineal foot which is obtained by dividing $45,000 by 7190 lineal feet of fencing.
"Some of the damages are readily determinable but others can only be approximated. That some damages may not be proved with exactness does not preclude recovery for them. As the Connecticut Supreme Court observed in Southern New England Contracting Co. v. State, 165 Conn. 644, 661, 345 A.2d 550
(1974); `There is no unbending rule as to the evidence by which damages are to be determined, but the object of the parties ought to be attained as nearly as possible. Lee v. Harris,85 Conn. 212, 214, 82 A. 186 (1912). `It is incumbent upon a plaintiff in a contract action to prove his damages with all the certainty which is reasonably possible, but where exactness is not possible he is not therefore to be precluded from a recovery, and the best approximation to certainty is all that is required.' Bartolotta v. Calvo, 112 Conn. 385, 395 152 A. 306
[1930].' See also Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544
(1931)." Walter Kidde Constructors, Inc. v. State, 37 Conn. Sup. 50,80. The court finds for the plaintiffs on this claim in the amount of $31,110.00 based upon the installation of 5,100 lineal feet of six foot chain link at 6.10 per foot.
(7) a claim in the amount of $1450.00 for a change in the boundary line of 80 feet and a relocating of the posts and fence at Madison Avenue. Defendant's Exhibit M reflects same as an extra to the contract and indicates it as being 100% completed. The court allows this claim in full.
(8) a claim in the amount of $875.00 for the removal of a 6 foot high re redwood slat fence which was to be reinstalled at a different location as evidenced by plaintiff's Ex. 7. Bill Hubbell, a Kapetan employee signed the invoice "for verification only." Defendant's Mr. LaVacca testified this item was considered site preparation and contemplated in the original contract and was not an extra. The court does not find that defendant agreed to this item as an extra and does not allow plaintiffs a recovery for same. CT Page 7380
The plaintiffs' total credits are in the amount of $52,261.46 as hereinbefore specifically enumerated.
The court finds that the defendant has credits in the following amounts: $480.00 as evidenced by defendant's Exhibit E, a check dated February 11, 1986 payable to P C Fence Co.: a check dated August 25, 1986 in the amount of $379.36 payable to P C Fence Co. and as reflected by defendant's Exhibit F; $10,408.80 by check dated January 27, 1987 payable to P C Fence Co. as reflected in defendant's Exhibit G,; $14,615.61 as reflected in defendant's Exhibit Q, a check dated March 25, 1987, payable to Ayala Construction. Defendant is further allowed a credit of $2,647.00 for labor it paid on plaintiff's behalf. Defendant claims a credit of $3,330.00, a check dated November 3, 1986 payable to P C Fence Co. as reflected in Defendant's Exhibit H. The court finds that this check was in payment for the installation of a temporary fence around a junction box and was not a part of this contract. It was a separate job and not a part of plaintiffs' claim. The court does not allow this credit.
The defendant's total credits are in the amount of $28,530.77.
Based upon the aforesaid findings, the court is unable to give credence to defendant's claims of an additional $48,727 in expenditures to complete the work originally encompassed in this $56,500.00 contract. It would appear that either the successor contract with Connecticut Fencemen, d/b/a Westport Fence Company was for an enlarged amount of work and materials over the instant contract, or was at a higher price, or the claimed $48,727.00 additional expenditure was in furtherance of another portion of defendant's $4,450,000.00 contract with Westland Properties of which the instant contract was only a small factor of approximately one per cent. (Ex. S).
The defendant has failed to prove the relevant allegations of its special defenses. The defendant has also failed to sustain its burden of proof in connection with its counterclaims.
The court finds for the plaintiffs on each of the defendant's counterclaims and judgment thereon may enter for the plaintiffs.
Judgment may enter in favor of the plaintiffs P C Fence Company and Ayala Construction Company on their combined complaints to recover of the defendant Kapetan, Inc. the total aggregate amount of $23,730.69 which is the difference in plaintiffs' credits of $52,261.46 and defendant's credits of CT Page 7381 $28,530.77, together with interest on said amount from April 28, 1987 computed at the legal rate together with the costs of this action.
BALLEN, JUDGE